COMMONWEALTH *vs.* GEORGE T. PERRY.

Middlesex.    November 23, 1923. — February 26, 1924.

Present: RUGG, C.J., BRALEY, CROSBY, PIERCE, & CARROLL, JJ.

*Conspiracy.    Evidence,* Competency, Of conspiracy, Admission or con-
fession of coconspirator, Book entry. *Practice, Criminal,* Order of
proof; Exceptions: estoppel to press by failure to remind trial judge
to perform duty voluntarily undertaken, estoppel to press by failure
to examine before admission documents admitted subject to objection.
*Estoppel.*

At the trial of indictments charging that the defendant entered into a
conspiracy with others to steal an automobile and to receive and aid
in concealing an automobile knowing it to be stolen, and also charging
larceny and concealing and aiding in the concealing of an automobile
knowing it to be stolen, one, alleged to be a coconspirator of the de-
fendant, pleaded guilty and, testifying on behalf of the Common-
wealth, in substance stated that a certain bill of sale was given to him,
the witness, by the defendant for use in selling the automobile, that
the bill of sale bore a fictitious name and a false serial number for the
automobile, being a number to which that originally on the automobile
had been changed with block planes purchased and furnished to him
by the defendant.    *Held,* that it was proper to admit in evidence the
bill of sale and the block planes.

At the trial of the indictments above described, it was error to admit in
evidence the testimony of a police officer reciting a conversation with
the coconspirator who had testified as above stated, which conver-
sation was had at or about the time to which the facts stated related,

was after the commission of the crimes alleged in the indictment, and was in every way consistent and in agreement with the coconspirator's testimony, nothing having appeared at the trial to justify the supposition that the defendant would contend that the testimony of the coconspirator was an afterthought formed and clothed for the occasion; such testimony of the police officer not being admissible to prove that the statements made by him to the witness were true, were not of recent invention and were not made under the pressure of some undue influence.

At the trial of the indictments above described, testimony by a police officer as to a conversation held, following the time of the commission of the alleged crimes, with one alleged to be a second coconspirator of the defendant, who had not pleaded guilty and who was being tried with the defendant, at which a third coconspirator, who had pleaded guilty, was present and the defendant was not, and at which the second coconspirator had stated that he had seen the third coconspirator, whom he always had known by a name other than his own, in the office of the defendant, while admissible as to the second coconspirator, was inadmissible and incompetent as to the defendant and, on the defendant's motion, should have been stricken out so far as it related to him.

*Whether* a failure by the defendant, at the trial of an indictment, to remind the trial judge at the close of the evidence to instruct the jury to disregard certain evidence, which the judge erroneously had admitted and which he had promised in the absence of the jury to strike out, estopped the defendant from prosecuting exceptions saved to the admission of the evidence, was not determined, exceptions by the defendant to other rulings being sustained and a new trial being ordered.

At the trial of the indictments above described, testimony by a coconspirator, who had pleaded guilty, that he had delivered a certain automobile to a person not named in the indictment, that he received therefor either money or a check and, when he delivered the automobile, signed a receipt, the body of which had been written by the defendant and which he identified at the trial, and that he did not know what became of the automobile, was inadmissible, it being admitted by the Commonwealth that the "particular car was never recovered" and there being no evidence that it was stolen and it not being identified either when the evidence was received or afterwards as an automobile in respect to which any crime had been committed by any of the defendants.

At the trial of an indictment charging a defendant with the larceny of a certain automobile and with the receiving or aiding in the concealment of the automobile knowing it to have been stolen, and also with the conspiring with others to steal or to receive or aid in the concealment of such automobile, it was error on the part of the trial judge to refuse to admit in evidence a certified copy of a record of a district court showing that the defendant had been acquitted on the charge of receiving the automobile knowing it to have been stolen.

At the trial of the indictments above described, where a material issue was, whether certain block planes, used by one of the alleged conspirators to change numbers on stolen automobiles, had been purchased and

furnished by the defendant, and where one of the coconspirators had testified that the defendant had procured them at a certain store, the judge admitted in evidence a book entry at that store of a sale of block planes, of the description of those shown by the coconspirator, to a man having the surname of the defendant, together with an entry that the planes were paid for, upon testimony of the bookkeeper that she copied the entry in the book from an order blank, that all she knew about it was that it was transmitted to her upon the order blank, that she could not say whether she saw the person that gave the order, and did not know whether it was a person of the surname of the defendant or what person of that surname it was. *Held,* that at common law the entry was inadmissible at the trial of an indictment for crime, and that it was not made admissible by G. L. c. 233, § 78.

At the trial of the indictments above described, testimony by a police officer that he " saw " a certain person " identify the car," referring to a car specified in the indictment, was *held* to be admissible as describing the act of identification and not the mental process of the person identifying.

Where, at the trial of an indictment, upon certain letters being offered in evidence by the Commonwealth as tending to show why a material witness was not called by the Commonwealth, the defendant objects to their admission but refuses to make an examination of the letters and to point out what ones, if any, were objected to as not pertinent to the issue, and the judge admits all of the letters subject to exceptions by the defendant, the exceptions must be overruled, the defendant being estopped to complain that only a part of the letters would have been sufficient for the purpose for which they were offered.

INDICTMENTS, found and returned on February 10, 1920, charging the defendant in sundry counts with larceny of automobiles, receiving or aiding in the concealment of automobiles knowing them to be stolen, and with conspiracy to steal automobiles and to receive or aid in the concealing of automobiles knowing them to be stolen.

In the Superior Court, the defendant was tried before *J. F. Brown,* J., with several others similarly indicted, as described in the opinion. Material evidence and exceptions saved by the defendant are described in the opinion. The defendant was found guilty on counts alleging conspiracy and on counts alleging the receiving or aiding in the concealment of automobiles knowing them to be stolen; and he was found not guilty on counts alleging larceny of automobiles. The defendant alleged exceptions.

*W. H. Garland,* for the defendant.

*R. T. Bushnell,* Assistant District Attorney, for the Commonwealth.

PIERCE, J.   The defendant, with one Barry, Collamore, Rice, Surette and Bouve, was jointly indicted for conspiracy, between the first day of January, 1917, and August, 1918, in two counts, the first count charging in substance that the said defendants conspired to steal automobiles and the second count in substance alleging that the same defendants conspired to receive by sale or aid in the concealment of automobiles, knowing the same to be stolen.   The defendant was indicted separately for stealing on November 30, 1918, an automobile, the property of Helliwell Garages, Inc. The defendant was also indicted separately, in two counts, upon the accusations of stealing and receiving on July 18, 1917, an automobile, the property of one Thomas M. Howard.   The defendant was also indicted separately on the charge of receiving, on October 2, 1917, a stolen automobile, the property of one David B. MacPherson.   These indictments, with four other separate indictments charging Collamore with receiving stolen cars, the property respectively described as of one Lowe, Eyges, Bridges, and Buffum, were tried together.

After the jury was empanelled the defendants Rice, Surette and Bouve each retracted his plea of not guilty, and pleaded guilty to the conspiracy charge and to the counts alleging receiving stolen automobiles, in the separate indictments pending against him.   The pleas were accepted by the court, and the trial proceeded against the defendant Perry and against the defendants Collamore and Barry on the indictments against them.   In the course of the trial Collamore fell ill and the cases against him were continued.   By the direction of the trial judge the jury found the defendant Perry not guilty of stealing the Howard car and the car of the Helliwell Garages, Inc.   On the three remaining indictments the jury found the defendant Perry guilty on both counts of the indictment charging conspiracy, and on the indictments charging him with receiving the Howard car and the MacPherson car, knowing them to have been stolen. The jury disagreed as to the charges against Barry.   Verdicts of guilty were returned on March 24, 1922; and the defendant on that day was sentenced to State Prison, on both

indictments for receiving stolen automobiles, with successive sentences. On November 16, 1922, the district attorney moved for sentence on the indictment for conspiracy and the defendant was therefore sentenced to the House of Correction, said sentence to be served after the previous sentences.

In the course of the trial the indicted coconspirators Rice, Surette and Bouve were called as witnesses and testified for the government. We shall consider the voluminous exceptions in the order of their presentation in the defendant's brief.

Before the government had introduced any evidence of the alleged conspiracy, Rice was called and testified that two police officers, Sheehan and Day, came to his place at Wilmington "at one time in 1918;" that at that time he had in his barn a Buick touring car; that they asked him "where he got said car;" that "he then showed Sergeant Sheehan a bill of sale to show that he had the possession rightfully of said car." He then identified as the document in question two pieces of paper which were offered in evidence. The defendant objected to their admission "on the ground that there was no proof that he was connected in any way with this particular transaction as to which the witness was about to testify." The papers were then marked exhibits "1 A" and "1 B," and the witness stated that they bore the name of William H. Halley, 12 Oak Grove Avenue, Springfield, Massachusetts; that he saw George T. Perry, the defendant, "sign that name in his office in the Journal Building, Boston, Massachusetts; that Mr. Perry made out the body of the bill." The defendant excepted to the admission of said paper as an exhibit, and stated his objection to be "that there was no evidence of conspiracy with Mr. Perry in any of these acts and they were not connected with him."

The witness was then shown certain dies and a block plane. In relation to these he testified, in substance, that he had seen them before "up in my place out at Wilmington;" that "he gave those articles to Sergeant Sheehan that night he came out;" that "Mr. Perry paid for those

dies, and they were turned back to Mr. Perry." The dies first above mentioned and the plane were then offered and received in evidence, marked exhibits "2" and "3" and the defendant duly excepted. The witness then testified that he got the plane at Haymarket Hardware Company, and that Mr. Perry purchased it; that the car found in his possession the night Sheehan went out there he got from the defendant Daniel K. Collamore, Melrose Highlands; that he paid $50 for it; that he changed the motor number on that car to 292492, which number he took off the bill of sale that he had in his possession, referring to exhibit 1, upon which a similar number appears. He then testified that Perry took the number from a book; that he described to the witness the way to change numbers on a motor, which the witness stated to be as he thereafter testified. He further testified that he painted the engines of cars with paint which he got and Perry paid for. It appeared from the testimony of the witness that he met the other alleged conspirators, Surette, Collamore, and Barry, at Perry's office in Boston; and it could have been found from Rice's testimony that the scheme was to have the cars delivered at his shop in Wilmington, where he would change the numbers and deliver the cars, under Perry's instructions, to other parties to the conspiracy for disposition.

There was no error in receiving in evidence the testimony connecting the defendant with the drafting of the bill of sale and the purchase of the plane and dies. Such testimony and the exhibits were relevant to establish against the defendant the charge of conspiracy; and the order of proof was a matter of judicial discretion, which does not appear to have been exercised in a manner prejudicial to the legal rights of the defendant. It follows that the exceptions taken to the testimony of Rice and the admission in evidence of the exhibits must be overruled. *Commonwealth* v. *Johnson,* 188 Mass. 382, 385. *Commonwealth* v. *Dorr,* 216 Mass. 314, 319.

The defendant duly excepted to the testimony of Sergeant Sheehan wherein, in substance, he said that on July 23, 1918, he had a conversation with Rice in reference to the Buick

touring car found in the barn of Rice; that Rice stated that he was to have the next car that came to the defendant Collamore's place of business; that Rice showed him the bill of sale that was put in evidence during the testimony of Rice; that Rice said that " he went to Lawyer George T. Perry's office and requested a bill of sale, saying to Mr. Perry that he had stolen a car in Lowell and that he would like to get a bill of sale to cover it, to show it to his mother; that was the week previous to this car afterwards coming to Collamore's; the following week or thereabouts a car came to Collamore's, and Collamore called him up about it, and he brought the car to Wilmington, where he changed the numbers to the numbers that were on this bill of sale." He further testified that Rice said " he [Rice] would go to Collamore's place and bring cars over and change the numbers at his place, and that he would go to Perry's office, where Perry would supply him with certain numbers to change on these cars, from a book; that he would take these certain numbers to Wilmington and put those numbers on the cars." He further testified that, on the night Rice had testified he (Sheehan) came to the home of Rice at Wilmington, Rice went into the barn, ripped up a boarding and produced a set of dies and a wooden block plane (which were the dies and plane introduced in evidence during the testimony of Rice), which Rice told the witness were used to change the numbers on the Ford cars, and the body number and number on the door of Buicks. He also testified that three or four days after the night referred to, that is, July 23, 1918, he had another conversation with Rice wherein Rice stated " he accompanied Mr. Perry to Allen Brothers on Cornhill, where there was some transaction regarding dies; that the dies that were received from Allen Brothers were given to him; that he used these dies to change numbers on Buicks; that Rice did not show him those dies in question and did not tell him where they were until later on, he should say in November, 1918; " and that Rice told him he had returned the dies to Perry.

The admission and statements of Rice to the police sergeant were in the nature of confessions of guilt, and mani-

festly were not verbal acts in furtherance of any scheme of the codefendants and Perry to steal automobiles, or to sell and receive automobiles that he or they knew were stolen. It is plain that the declarations to the police officer were not made with a view to divert and lead him from further investigation, while the defendants concealed and made safe disposal of the property which they had in combination obtained; nor was it an attempt to conceal any evidence. which would be material to connect them or any of them with their unlawful scheme, as charged in the several indictments. The testimony of Sheehan that Rice made statements and declarations of fact consistent or in agreement with his testimony at or about the time to which the statements of fact relate, was not admissible to prove that such statements were true or were not of recent invention, and were not made under the pressure of some undue influence; and nothing had developed at the trial to justify the supposition that the defendant would contend that the declarations were afterthoughts formed and clothed for the occasion. *Commonwealth* v. *Retkovitz*, 222 Mass. 245, 249, 250.

Subject to the defendant's exception to the admission of so much of the testimony by Sheehan as related to the defendant of a conversation with Collamore (then on trial), Sheehan testified, in substance, that " somewhere in the vicinity of the seventh of August, 1918," he had a conversation with Collamore at which one Surette, a codefendant, was present; that Collamore in reply to questions said, in substance, that Surette and John Marshall were the same person; that he (Collamore) did not know him by any other name than John Marshall and had seen him in the office of the defendant, where he always knew him as Marshall. At the close of the narrative of the conversation with Collamore and after cross-examination, the defendant renewed a motion, made at the close of the direct testimony, " to strike out this testimony so far as the defendant Perry was concerned so far as it appeared that the conversation took place after the termination of the alleged conspiracy." The trial judge denied the motion and the defendant excepted. The exception must be sustained. The evidence, while

admissible against Collamore, was inadmissible against the defendant, and the defendant under his motion to strike out the testimony to which he had excepted was entitled to have the jury instructed that they should consider the evidence only as to Collamore. *Commonwealth* v. *Shepard,* 1 Allen, 575, 581, 582. *Commonwealth* v. *Feci,* 235 Mass. 562, 568, 571.

The trial judge received in evidence, subject to the exception of the defendant, the record of the Municipal Court of Brookline, showing that one Stephen Crowley on November 18, 1919, pleaded guilty to stealing on October 2, 1917, an automobile, the property of one David B. MacPherson. Crowley was not a codefendant in the indictment under which the defendant was then on trial, but had been a codefendant in an indictment found in 1918 which was then nolprossed. At the close of the evidence, the judge of his own motion stated in the absence of the jury: " I also strike out . . . the record of the Police Court of Brookline." For some reason not disclosed in the record he did not do so and the defendant did not call his attention to the omission. The MacPherson car was one of the automobiles the defendant was alleged to have received on October 2, 1917, " well knowing the said property to have been stolen." It is plain the reception of the record was material in proof of the allegation that the car which was received by the defendant on October 2, 1917, was a stolen car and the property of MacPherson. The error was material and not trivial and unimportant, as is argued by the Commonwealth. *Commonwealth* v. *Slavski,* 245 Mass. 405. *Kirby* v. *United States,* 174 U. S. 47. In consideration of the manifest fact that a similar error in the admission of evidence is not likely to be made at a new trial on this indictment, and in consideration of the further fact that the exceptions of the defendant must be sustained on other grounds, we think it is unnecessary at this time to determine whether in a criminal case a defendant is estopped to prosecute the exceptions which he has saved by the failure of his attorney to remind the trial judge that he had omitted to instruct the jury to disregard the evidence to which the exception had been taken,

as he had undertaken to do on his own motion. In this connection see *Commonwealth* v. *Johnson*, 199 Mass. 55, 59. *Clarke* v. *Fall River*, 219 Mass. 580, 586. *N. J. Magnan Co.* v. *Fuller*, 222 Mass. 530. *Commonwealth* v. *Wakelin*, 230 Mass. 567, 576. *Diaz* v. *United States*, 223 U. S. 442, 450.

The trial judge also stated to the defendant, " I also strike out Cumming's testimony," but did not for some reason direct the jury to disregard it. The evidence, which was received subject to the exception of the defendant, related to matters not the subject of the several indictments, and was not admissible to affect the credibility of the defendant, who had testified in his own behalf. As stated in reference to the Crowley exception, *supra*, the exigencies of the case as now presented do not require a decision as to whether the defendant did or did not estop himself to rely on his exception by failing to remind the trial judge that he was forgetful of his undertaken duty.

Against the exception of the defendant, Rice was permitted to testify that he delivered a car from his house to one Pembroke, which lacked a splash pan on the engine; that he received therefor either money or a check and signed a receipt when he delivered the car; that he recognized a paper then shown to him as the receipt which he signed and gave to Pembroke; that he did not write the body of the receipt, it was written by Perry; that he did not know what became of the car lacking the splash pan which he delivered to Pembroke. It was admitted by the Commonwealth that " this particular car was never recovered; " there was no evidence that it was stolen and it was not, when the evidence was received or afterwards, identified as one in respect of which any crime had been committed by any of the defendants. This evidence was important in establishing by means of the receipt the alleged conspiracy between Rice and Perry. It is plain the testimony was inadmissible, should have been stricken out on the motion of the defendant, and that the exception must be sustained.

The defendant's exception to the refusal of the trial judge to admit in evidence a certified copy of the record of the

Police Court of Somerville of the acquittal of Perry on July 25, 1919, on the charge of receiving the Helliwell car, knowing it to be stolen, must be sustained. The Helliwell car was one of the cars which had been specified by the Commonwealth as having been received in pursuance of the conspiracy charged in the second count of the indictment. The fact that in 1919 he had been found not guilty of receiving the Helliwell car, if shown, was conclusive as to his lawful possession of the car in case the jury believed the car was stolen and was the one which, as the Commonwealth claimed, he kept and used from November, 1917, until it was taken from him in replevin. In passing it is to be observed that the jury did, by direction of the trial judge, find Perry not guilty of stealing the Helliwell car.

Miss Florence J. Grover, bookkeeper in the employ of Allen Brothers of 17 Cornhill, Boston, testified that a certain book was one kept in the regular business of the firm; that certain entries therein were in her handwriting; that a certain entry was made by her on April 9, 1918, that that order was written down by her from an order blank used in the store which she copied into the book. She further testified " that all she knows about the entry is that it was transmitted to her upon an order blank which she copied into the book; that she could not say whether she saw the person that gave the order or not and did not know whether or not it was a Mr. Perry or what Mr. Perry it was." The defendant after the introduction of the evidence moved that the testimony be stricken out; the motion was denied and the defendant excepted. The entry which was admitted in evidence and shown to the jury subject to the defendant's exception reads: " to one set of 5/32 steel block figures, $2.50, with a credit by 1/8 set returned, $1.50." It was marked " For Mr. Perry. Call Wednesday," and stamped, " Paid." This entry was inadmissible and its admission was manifestly prejudicial error. Upon the evidence the entry was not admissible in civil or criminal cases at common law; and such an entry is not made admissible in criminal proceedings against the objections of the defendant, under G. L. c. 233, § 78. The exception to the admission of the

entry in evidence is sustained. *Kent* v. *Garvin,* 1 Gray, 148. *Kaplan* v. *Gross,* 223 Mass. 152, 154. *Commonwealth* v. *Stuart,* 207 Mass. 563, 568. *Commonwealth* v. *Wakelin,* 230 Mass. 567, 575.

In the sequence of question and answer, we think the answer of Sheehan that he " saw Mrs. Lillian K. Eyges identify the car " describes the act and not the mental processes of Mrs. Eyges. With such interpretation the testimony was properly received. *Commonwealth* v. *Sturtivant,* 117 Mass. 122. *Jenkins* v. *Weston,* 200 Mass. 488, 493. *Mielke* v. *Dobrydnio,* 244 Mass. 89, 91, 92.

The letters introduced in evidence to show why Crowley was not called by the district attorney were properly admitted as a whole, after the refusal of the defendant to examine them, and point out what ones, if any, were not pertinent to the issue. Refusing to make such an examination, he cannot thereafter complain that a part of the whole would have been sufficient for the purpose for which the letters were offered, and have an exception to the admission of the excess. This exception must be overruled.

The remaining exceptions are not now considered, because they either disclose no error or present questions of evidence and of procedure which are not likely to arise at any new trial.

*Exceptions sustained.*