## COMMONWEALTH *vs.* GEORGE T. PERRY.

Middlesex.   November 13, 1925. — February 8, 1926.

Present: RUGG, C.J., BRALEY, PIERCE, WAIT, & SANDERSON, JJ.

*Conspiracy. Receiving Stolen Goods. Evidence,* Competency; Materiality; Opinion: expert; Best evidence; Secondary. *Witness,* Cross-examination, Impeachment. *Practice, Criminal,* Conduct of trial: discretionary rulings as to evidence; Arguments to jury; Exceptions. *Pleading, Criminal,* Bill of particulars.

An indictment charged several defendants, in one count, with conspiring "together to commit thereafter from time to time and on different occasions as opportunity therefor should offer, and not at any times then particularly set and fixed, the crime of stealing automobiles . . . the property of persons unknown to said" defendants, and in a second count in similar language with a conspiracy to receive stolen automobiles. One of the defendants moved that if the Commonwealth "purposes to show that any automobile or automobiles were stolen in pursuance of said alleged conspiracy," or to show that any were received in pursuance of the conspiracy alleged in the second count, it specify the names and addresses of the owners and descriptions of the automobiles stolen and the name and address "of the person . . . who stole the same." The Commonwealth filed specifications that it "purposes to show as acts of stealing or receiving automobiles in pursuance of the conspiracy alleged in count 1, the specific offences of stealing or receiving charged" in twenty separate indictments which it enumerated. *Held,* that, at the trial of the indictment against the defendant on whose motion the specifications were given, the evidence which could be introduced to prove the existence of the conspiracy was not limited by this specification to evidence which related only to automobiles specified thereby as stolen or received in carrying out the conspiracy.

At the trial above described, testimony of one of the alleged coconspirators, who had pleaded guilty, which included a statement of a conversation with the defendant about buying, under an assumed name and by means of a small payment of cash and a note, a car advertised for sale, was competent in showing the relations and understanding between the two during the period fixed in the indictment.

Another of the defendants, alleged in the indictment above described to have been a coconspirator, who had given evidence before the grand jury and had pleaded guilty, was asked in cross-examination by the defendant whether in his testimony before the grand jury he had told them "anything about being concerned in the theft of" one of the cars alleged to have been stolen pursuant to the conspiracy. The question was excluded subject to an exception by the defendant. The record

disclosed nothing to show that any testimony given by the witness before the grand jury contradicted his testimony at the trial of the indictment. *Held*, that the exception must be overruled.

Limiting of cross-examination at the trial of an indictment is within the discretionary power of the trial judge and an exception to an exercise of such discretion will not be sustained unless it appears that the discretion has been abused.

An exception to testimony, at the trial of the indictment above described, by a police sergeant, qualified to testify as an expert in regard to the things taken into account by the police in tracing an automobile, that he had located one of the cars, which were alleged to have been the subject of the conspiracy, "which" he stated "had been stolen," was overruled, although the questions were leading and the answers seem to contain an opinion on the ownership of the car inquired about, where, when taken in connection with the rest of the witness's testimony and the course of the trial, it appeared that the jury must have understood that the witness was describing what he had done and observed in regard to a car which the Commonwealth claimed to be the car in question, and not that he was testifying to his opinion in regard to its ownership.

It is the duty of an excepting party to show from the bill of exceptions that he has been prejudiced.

While, at the trial of an indictment, a defendant cannot be compelled to produce evidence against himself, there is nothing essentially improper or invasive of his rights in the district attorney's asking if he will produce a paper the existence of which is needed by the prosecution and which would be relevant evidence to prove a material issue at the trial; and if such a request is made by the district attorney and is not complied with by the defendant, secondary evidence of the contents of the paper becomes admissible.

Evidence was admissible at the trial of the indictment above described to prove acceptance by the defendant of a policy of insurance bearing the motor number of one of the automobiles which was the subject of the conspiracy and insuring the automobile in the name of the defendant's wife, however the number was furnished to the insurer.

An exception by the defendant at the trial of an indictment to the exclusion of testimony, where there does not appear in the record any offer of proof or any other evidence which shows that the subject of the testimony was relevant or material, must be overruled.

Exceptions by the defendant to rulings by the trial judge at the trial of the indictment above described, refusing to permit cross-examination of a witness for the Commonwealth to show bias or a further offer of proof for the same purpose, were overruled on the ground that the action of the judge was not an improper exercise of his discretion, where from the record it appeared that the bias of the witness was apparent and the evidence manifestly would have led to much collateral matter likely to distract attention from the main issues before the jury.

Exceptions, saved by the defendant at the trial of the indictment above described, to language and conduct of the district attorney in his

argument to the jury, to a refusal by the judge to instruct the jury in a form requested with respect to such remarks, and to alleged inadequacy of instructions actually given which bore upon such argument and conduct, were overruled where it appeared that some of the remarks by the district attorney were justified if the jury took the view of the effect of the testimony for which he contended, that others did not exceed fair limits, that certain epithets used were not excessive or ill-applied if the jury believed the testimony on which they were predicated, that certain expressions of personal opinion of the district attorney were in answer to a challenge in argument by the defendant's counsel, were directed to that argument and were accompanied by declarations that the jurors were to consider the evidence without regard to the opinions and feelings of the speaker, and that the judge in his charge dealt adequately with the subject with such emphasis as would correct any erroneous effect resulting from the nature of the argument of the district attorney.

The remedy of a party, who has presented to a judge a bill of exceptions which the judge will not allow unless it is amended in a form suggested by him, is to treat the demand for amendment as a refusal to allow the bill and to proceed under G. L. c. 231, § 117, by a petition to this court for the establishment of the exceptions; if he amends the bill as suggested and it then is allowed, he is precluded from objecting further and cannot by a second bill of exceptions bring to this court the propriety of the action of the judge requiring the amendment to be made.

INDICTMENTS, found and returned on February 10, 1920, and described in the opinion.

In the Superior Court, the case first was tried before *J. F. Brown*, J., with the result described in the opinion. Exceptions saved at that trial were sustained by this court in a decision reported in 248 Mass. 19. A second trial was before *Walsh*, J. Material evidence at that trial, exceptions by the defendant, and instructions by the judge, are described in the opinion. Requests by the defendant for rulings, refused by the judge, were as follows:

"1. Upon all the evidence the defendant, Perry, is entitled to a verdict of not guilty."

"11. There is no evidence of any cars alleged to have been stolen or received pursuant to the alleged conspiracy except the evidence introduced by the Commonwealth in respect to the so called Howard and MacPherson cars.

"12. There is no evidence of any specific cars alleged to have been stolen or received pursuant to the alleged conspiracy except the evidence introduced by the Common-

wealth in respect to the so called Howard and MacPherson cars.

"13. The jury is instructed to disregard all evidence as to the stealing, receiving or changing of numbers on any car or cars except the so called Howard and MacPherson cars."

The defendant was found guilty and alleged exceptions.

*W. H. Garland,* for the defendant.

*R. T. Bushnell,* Assistant District Attorney, for the Commonwealth.

WAIT, J.   In February, 1922, four indictments were returned against the defendant.   The first, No. 6167, charged that Perry, Barry, Collamore, Rice, Surette and Bouve between January 1, 1917, and August 1, 1918, at Melrose, "did conspire together to commit thereafter from time to time and on different occasions as opportunity therefor should offer, and not at any times then particularly set and fixed, the crime of stealing automobiles . . . the property of persons unknown to said . . . [Perry, Barry, Collamore, Rice, Surette and Bouve] at the time of such conspiracy." By a second count it charged in similar language that this and other defendants "did conspire together to commit thereafter from time to time and on different occasions as opportunity therefor should offer, and not at any times then particularly set and fixed, the crime of buying, receiving or aiding in the concealment of stolen property, to wit: — automobiles, which might at the time of such conspiracy have been already or which might thereafter be stolen from persons not then known to said . . . [Perry, Barry, Collamore, Rice, Surette and Bouve], but all of which automobiles the said" codefendants named "then knew, or thereafter and before such buying, receiving or aiding in the concealments of such stolen property should have been accomplished, should come to know had been stolen."

The second indictment, No. 6207, by a first count charged Perry alone with stealing at Winchester, on July 18, 1917, an automobile belonging to one Howard; and by a second count, at the same time and place with receiving that automobile knowing it to have been stolen.

The third indictment, No. 6218, charged Perry alone with

stealing on November 30, 1917, an automobile belonging to Helliwell Garages, Inc.

The fourth indictment, No. 6224, charged Perry alone with receiving at Malden, on October 2, 1917, an automobile belonging to MacPherson knowing it to have been stolen.

Other indictments were found against Barry, Collamore, Rice, Surette and Bouve, severally charging each with stealing specified automobiles, or receiving similar stolen automobiles at various times and places.

All the defendants pleaded not guilty to No. 6167. They were placed on trial March 6, 1922. After the jury was empanelled, Rice, Surette and Bouve retracted their pleas and pleaded guilty to both counts of No. 6167, the conspiracy indictment, and to the counts in the separate indictments charging receipt of stolen automobiles knowing them to have been stolen. Perry was found guilty upon both counts of the conspiracy indictment, upon the second count of No. 6207 for receiving the Howard car knowing it to have been stolen, and upon No. 6224 for receiving the MacPherson car knowing it to have been stolen. By direction of the court, verdicts of not guilty were returned in No. 6218, and on the first count of No. 6207, which, severally, charged stealing the Helliwell Garages, Inc. and the Howard cars. The jury disagreed as to Barry. The case was continued as to Collamore whose health broke down during the trial. Exceptions claimed by Perry were sustained by this court — *Commonwealth* v. *Perry*, 248 Mass. 19. In February, 1925, he was again placed on trial, alone this time, on No. 6167, the second count of No. 6207 and No. 6224; for conspiring to steal automobiles; for conspiring to receive automobiles to be stolen, which he would know at the moment of receipt though not of conspiring, had been stolen; for receiving the Howard car knowing it to have been stolen; and for receiving the MacPherson car knowing it to have been stolen. Rice, Surette and Bouve testified for the Commonwealth; and so did one Pembroke who might, if the evidence were believed, have been found to be a party in wrongful acts of the alleged conspirators.

Perry was found guilty on all the charges. He now files

two bills of exceptions. The first sets out many exceptions, some of which are waived by failure to argue them in this court. We shall take up those which are pressed, substantially as they are grouped in the defendant's brief.

Many exceptions were claimed to the admission of testimony from Surette, Rice and Bouve, in regard to conversations about cars with Perry and to their conduct with respect to cars which had not been set out in specifications filed in March, 1922. At that time Perry moved that the Commonwealth upon each count of the conspiracy indictment, if it "purposes to show that any automobile or automobiles were stolen in pursuance of said alleged conspiracy," or to show that any were received in pursuance of the conspiracy alleged in the second count, be ordered "to specify the date . . . the place or places where . . . , the names and addresses of the owner or owners thereof, a description of the automobile . . . and the name . . . [and] address . . . of the person . . . who stole the same." The Commonwealth filed specifications that it "purposes to show as acts of stealing or receiving automobiles, in pursuance of the conspiracy alleged in count 1, the specific offences of stealing or receiving charged" in twenty separate indictments which it enumerated and which had been found against the several persons alleged in the present indictment to be conspirators.

The evidence which could be introduced to prove the existence of the conspiracy was not limited by this specification to evidence which related only to automobiles specified thereby as stolen or received in carrying out the conspiracy, as the defendant contends. The indictment charged making and participation in a general conspiracy to steal or to receive stolen automobiles. It did not charge a series of separate conspiracies to steal or receive. The contentions of the defendant with regard to the effect of the specifications miss this distinction and, as a consequence, are unsound. The exceptions to the admission of the evidence of Surette, Rice, and Bouve, and the refusal to strike out testimony in regard to cars other than the Howard and MacPherson cars, are all based upon this misconception. The rulings of the judge were right. These exceptions are overruled.

There is nothing in *Commonwealth* v. *Giles*, 1 Gray, 466, *Commonwealth* v. *Sinclair*, 195 Mass. 100, or the earlier decision in this case, *Commonwealth* v. *Perry*, 248 Mass. 19, cited by the defendant, which is inconsistent herewith.

The testimony of Bouve in regard to a conversation with Perry about buying, under an assumed name and by means of a small payment of cash and a note, a car advertised for sale was competent in showing the relations and understanding between the two during the period fixed in the indictment. The act proposed was larceny, or could be so found. The effect of the testimony was for the jury.

Surette in cross-examination had testified that he had given evidence before the grand jury. He was asked whether at that time he told "the grand jury anything about your being concerned in the theft of the Howard car." The question was excluded and the defendant excepted. Nothing appears to show that any testimony given by him at that time contradicted the testimony which he had given in this trial.

The limit of cross-examination was within the discretion of the presiding judge. We cannot say that it was abused, or that the defendant has been prejudiced.

There was no reversible error in dealing with the testimony of Police Sergeant Sheehan. He was qualified to testify as an expert in regard to the things taken into account by the police in tracing an automobile; and his opinion that a number on a car which he was describing had been changed was competent. He was asked " . . . did you locate, in connection with your investigation of this case, Sergeant, the car belonging to Mr. Thomas Howard of Winchester, which had been stolen in July, 1917?" He answered "Yes, sir." "Where did you locate it, Sergeant?" He answered: "At a garage at Natick, Mass." "And when?" He answered "November 16." These questions and answers were subject to the defendant's objection and exception. The questions were leading and the answers seem to contain an opinion on the ownership of the car inquired about; but when taken in connection with the rest of the witness's testimony and the course of the trial, we think the jury must have understood

that the witness was describing what he had done and observed in regard to a car which the Commonwealth claimed to be the Howard car; and not to be testifying to his opinion in regard to its ownership. The question directed his attention to a car about which a series of questions were to be put to him.

Surette testified that in June or July, 1917, he went to Winchester, took a Buick touring car "D 45" belonging to Howard, drove it to Collamore's barn in Melrose, left it there, reported what he had done to Perry the next morning and received money from him. A "D 45" Buick touring car which the Commonwealth contended and brought evidence to show was the same car, was seen later by Sergeant Sheehan, who testified that it bore a motor number 192,315.

The defendant contends that the Commonwealth was permitted to introduce evidence of Woods, an insurance agent, that a policy on a Buick touring car, "D 45," motor number 192,315, was issued from his office, dated July 21, 1917, insuring the wife of the defendant as owner. The defendant excepted to the admission of the evidence. The substance of the evidence was competent. However the number was furnished to the insurers, whatever it may have referred to, if the defendant accepted the policy containing it, as there was evidence that he did, without protest so far as the bill of exceptions discloses, its presence in the policy was a circumstance properly admissible in evidence. Its weight and significance were for the jury.

Of course, the policy itself was the best evidence of what it contained. The witness testified that subsequent to July, 1917, owing to negotiations with the defendant, the policy was changed by increasing the amount and transferring it to cover Buick touring car No. 248,146. He further testified that he had seen the policy in court at the first trial, when it had appeared in the hands of the defendant's counsel. The bill of exceptions does not make clear whether at that time the witness saw in it the figures 192,315 which he testified had been in the policy when issued. If he did then see them he was testifying as of his own knowledge in regard to what it contained and there is nothing in the objection of

the defendant based upon the claim that the witness was not competent to give evidence in regard thereto because he was not speaking from his own knowledge. It is the duty of the excepting party to show from the bill of exceptions that he has been prejudiced. This he here fails to do.

The question remains, however, whether any evidence in regard to the contents of this policy should have been admitted. After the witness had testified that he had seen the policy in the court room at the former trial and that at that time counsel for the defendant had it, the assistant district attorney said "Do you mind letting us see that policy now?" Counsel answered, "The defendant, your Honor, doesn't produce evidence to assist the government"; and the judge said "You are not obliged to." The defendant thereupon claimed an exception. There is no merit in it. Counsel for the Commonwealth then said: "It isn't a demand. It is merely a request as to whether you desire us to have it," and proceeded with questions, the answers to which disclosed that changes had subsequently been made in the policy and that it had been transferred to another car. To the admission of this answer an exception was taken. This also is without merit. The answer was competent if any testimony in regard to the policy was admissible.

A defendant cannot be compelled to produce evidence against himself, but there is nothing essentially improper or invasive of his rights in asking if he will produce a paper, the existence of which is known, which is needed by the prosecution. See *Commonwealth* v. *Carbin*, 143 Mass. 124. Such a demand may be a necessary basis for proof of its contents by secondary evidence. See *Commonwealth* v. *Bishop*, 165 Mass. 148, 150. Secondary proof was admissible under the circumstances. The decision of this court with regard to the testimony of Miss Grover, admitted at the earlier trial, 248 Mass. 19, 29, does not apply to the testimony of Woods. We have discussed the question on the assumption that the contents of the policy were put in evidence. The bill of exceptions, however, justifies the contention of the Commonwealth that by mistake no answer was obtained from the witness, so that, as matter of fact, there was no evidence in

the case in regard to the matter. There can be no good exception to a refusal to strike from the evidence something which never was in the evidence.

Wilson, an insurance broker called by the defendant, testified in regard to a conversation held in his presence by telephone by Perry with some one whom Wilson did not see. At Perry's request, and apparently as the conversation was going on, he took down some numbers and details in regard to an automobile to which the telephonic communication related. He was asked whether he heard Perry repeat over the telephone the numbers which he had taken down, and to state the name Perry used in speaking. The questions and answers were excluded over the defendant's exception. The redirect examination disclosed that Wilson did not recall what the numbers were. The bill of exceptions does not set out any offer of proof nor what answers were expected. There was no error in the ruling.

In cross-examination of Pembroke, the defendant sought to show that by arrangement with the then district attorney, Tufts, Pembroke in the course of the year 1918 had placed a large amount in Liberty Bonds with one McVey to be used to settle claims in regard to alleged stolen automobiles which had passed through Pembroke's hands, any balance to be paid to William J. Corcoran, his attorney; that this was done as a consequence of complaints against Pembroke which the district attorney was investigating; that the witness was seeking to throw the blame on Perry and that the payment and other conduct in connection with the matter tended to show bias and a motive for the testimony against Perry which the witness was giving. The questions were excluded and the judge refused to hear further offer of proof. The bill of exceptions discloses that enough was stated to make clear the general nature of the evidence sought to be introduced. There was no error in the rejection of a further offer.

The admission or rejection of the questions in cross-examination was within the discretion of the judge. Testimony that Pembroke had received stolen machines from Perry was already in evidence. The jury must have known that Pembroke was threatened with indictment. His bias

was apparent. That bias was a proper subject for consideration by the jury, and material. Nevertheless, the evidence manifestly would have led to much collateral matter likely to distract attention from the main issues before the jury. We cannot say that the discretion of the judge was exercised erroneously.

The defendant has not argued the exception to the refusal to give the request for instruction numbered 1. We treat it as waived. Requests for instructions numbered 11, 12 and 13, are based upon the erroneous contention in regard to the scope of the specifications which has been discussed already. There was no error in refusing to give them.

The defendant saved exceptions to the language and conduct of the assistant district attorney in his argument to the jury; to the refusal of the judge to instruct the jury in the form requested with respect to those remarks; and to the inadequacy of the instructions actually given which bore upon his argument and conduct. There was no defect in the method of presenting his objections and claiming his exceptions. *Commonwealth* v. *Cabot*, 241 Mass. 131. The remarks objected to related to the attorney's bias, which he stated with vehemence to be against the defendant; his opinion of the defendant, stated in detail, in the exceptions; his comment upon the witness Hapgood; and his comment upon defendant and his counsel in regard to a visit they had made to one Moriarty. The bill of exceptions does not set out in full the argument of the defendant's counsel but it shows that he referred to the conduct of the assistant district attorney as actuated by personal feeling toward the defendant and his counsel; and that, although objection was made, the judge took no action and allowed counsel to go on.

We have examined with care the argument for the Commonwealth, which is given in full. The reference to the interview with Moriarty was justified if the jury took the view of the effect of the testimony for which the counsel contended.

The remarks upon the testimony of Hapgood did not exceed fair limits.

The epithets used were not excessive or ill-applied if the jury believed the testimony on which they were predicated.

The expressions of personal opinion were an answer to the challenge of the argument for the defendant, they were directed to that argument and they were accompanied by declarations that the jury were to consider the evidence without regard to the opinions and feelings of the speaker.

Language ought not to be permitted which is calculated by abusive epithets, vehement statements of personal opinion, or appeals to prejudice, to sweep jurors beyond a fair and calm consideration of the evidence. Much, however, must be left to the discretion of the judge who has seen and heard the innumerable incidents of a trial where men are contending earnestly.

This court in *Commonwealth* v. *Cabot*, 241 Mass. 131, held that an argument was grossly improper and unjustifiable; and in *London* v. *Bay State Street Railway*, 231 Mass. 480, declared that the argument misstated the law. Here there was no such impropriety that the defendant has ground for successful exception. In his charge the judge said: "What the district attorney said in his opening or in his closing argument or during the trial, is not evidence. What counsel for the defendant said during his opening to you or during the trial or in his closing argument, is not evidence. The issue is not one between the district attorney and counsel for the defendant. The issue is between the Commonwealth of Massachusetts and George T. Perry, the defendant at the bar. Any asperities between counsel and the district attorney, or between either of them and the court, should not influence you in ascertaining what the facts are, one way or the other. You are to find the facts from the testimony and the evidence in the case. You are to find the truth . . . . You are not to take into consideration, Mr. Foreman and gentlemen, the statement of the district attorney yesterday, made during his argument, to the effect that he is biased or prejudiced, because you are not to be swayed in your judgment by bias or prejudice in this case, and you should see to it that nothing he said in his closing argument to you yesterday should give rise in your minds to any prejudice or bias, or to any sympathy for anybody who may have testified or who may have been affected by what has been testified to

as having happened. Your duty, Mr. Foreman and gentlemen, is to calmly and dispassionately take the evidence and testimony which has been submitted to you, scrutinize it carefully, consider the appearance and manner of the witnesses upon the stand, say whether or not you see anything in their testimony, or in any testimony in the case, which affects the credibility of any of these witnesses in any way, and discard all testimony which you say you do not believe to be truthful, and settle the issue on what you find the truth or the truthful testimony to be."

In three other places in the charge this warning was reiterated; and at its very close, after he had denied the written motion asking further detailed instruction on the point, the judge said, and they were the last words before the jury retired: "Now, Mr. Foreman and gentlemen, I wish once more to emphasize and caution you, with all the earnestness that I can, that you are not to permit any considerations of bias or prejudice to influence you in this case, either which may arise from the testimony that you have heard, or from anything that may have been said, or any epithets or characterizations or opinions expressed in the closing argument to you. You are to eliminate them from your minds and from your consideration, and permit your cool, calm and dispassionate judgment to settle the issue of this case."

The charge dealt adequately with the subject "with such emphasis as . . . [would] correct any erroneous effect." *Commonwealth* v. *Richmond*, 207 Mass. 240, 250.

All the exceptions in the first bill have been examined. They must be overruled.

The defendant has sought by a second bill of exceptions to secure a determination that a paragraph in the first bill of exceptions is wrongfully there. Such a question cannot be raised by a bill of exceptions. When a bill of exceptions is presented for allowance, it is the judge's duty to make sure that it states correctly all the facts of the trial essential to present truly the question of law sought to be raised. If it does not, he may insist upon amendment to make it conform to the truth; or he may, at once, disallow it and certify that it does not conform to the truth. The remedy of the except-

ing party, if he is unwilling to amend the bill as he has presented it, is to treat the demand for amendment as a refusal to allow, and to proceed under the statute, G. L. c. 231, § 117, by petition in this court for the establishment of his exceptions. By accepting the allowance of a bill which has been amended, he has precluded himself from objecting further.

In the case before us there was no impropriety in the judge's action. The matter inserted was essential to the apprehension of several of the exceptions.

The second bill of exceptions is dismissed. The exceptions taken by the first bill of exceptions are severally overruled.

*So ordered.*