ISAAC H. FEINBERG & others *vs.* ATLANTIC THEATRES CORPORATION.

Suffolk. February 5, 1931. — March 17, 1931.

Present: RUGG, C.J., CROSBY, PIERCE, SANDERSON, & FIELD, JJ.

*Practice, Civil*, Argument to jury, Exceptions, Charge to jury.

Counsel for the plaintiff, in his argument to the jury at the trial of issues in a suit in equity against a corporation, argued that the conduct of a certain attorney, who was connected with the defendant and who had testified at the trial, was fraudulent; and that "the plaintiff . . . was an old man and a cripple, and . . . they were trying to take away from him what rightfully belonged to him." Counsel then read to the jury the attorney's oath as set forth in G. L. c. 221, § 38, and directed the jury's attention "to the fact that . . . [the attorney] was making a defence here for lucre and malice

and was delaying . . . [the plaintiff] in the prosecution and collection" of his claim. The trial judge did not accede to a request by the defendant to instruct the jury to disregard the argument by counsel for the plaintiff, and charged the jury that it was for them to determine whether quotations of evidence by counsel in their arguments were correct; that their recollection of the evidence governed; that they should disregard statements by counsel not in accord with their recollection of the evidence; and that, in arriving at conclusions suggested by counsel, they should be sure that the facts upon which the conclusions were based were true facts founded upon the evidence. Upon exceptions by the defendant, it was *held*, that the reading of the attorney's oath to the jury by counsel for the plaintiff and his argument were prejudicial to the defendant and destructive of an impartial trial, and the charge was inadequate to overcome the effect they were likely to create; and that the defendant's exceptions must be sustained.

BILL IN EQUITY, filed in the Superior Court on August 11, 1927, against Atlantic Theatres Corporation, Melrose Operating Co., Coolidge Operating Co. and Edward M. Dangel, Esquire, and afterwards amended, to set aside a bond issue and to recover money paid by the plaintiffs to the defendant Atlantic Theatres Corporation, by reason chiefly of alleged fraudulent representations and conduct by the defendant Mr. Dangel.

The suit was referred to a master, who found that there was no fraud. By order of *Bishop*, J., interlocutory decrees were entered confirming the master's report and dismissing the bill against all the defendants except Atlantic Theatres Corporation. The plaintiffs were permitted to amend the bill by adding a prayer that the defendant Atlantic Theatres Corporation be ordered to pay to the several plaintiffs the amount of their overdue coupons with interest. The following issues were framed for trial by jury:

1. "Were the bonds referred to in the bill of complaint legally issued to any of the complainants as bona fide holders for a valuable consideration?

2. "If the answer is in the affirmative, then to which of the complainants were the bonds issued legally as bona fide holders for a valuable consideration?"

The issues were tried before *Gibbs*, J. Mr. Dangel testified at length at the trial. After the arguments to the jury,

a colloquy occurred between the judge and the defendant's counsel in which counsel objected to certain statements made by counsel for the plaintiffs in his argument. Counsel for the defendant pointed out some statements which, he claimed, were objectionable and then the colloquy was as follows:

DEFENDANT'S COUNSEL: "That Mr. Dangel arranged to have the title of the Atlantic Theatres property transferred back to the corporation; that no stock of the Atlantic Company was then issued to any of these plaintiffs; that nothing but Melrose stock and bonds were issued; that the Melrose bonds were first mortgage bonds; and these were Mr. Dangel's bonds he gave up, and that the corporation did nothing to put these bonds in operation, and there is no evidence that they came from the corporation's treasury.   'I told him [the plaintiff] at the trial that Mr. Dangel was guilty of fraud.'"

The JUDGE: "On that particular point what he said was — he asked where he first got his information that these bonds were illegally issued, and Mr. Dangel said, 'I first got it from you, when you accused me of fraud.' [Plaintiff's counsel] . . . didn't say that.   He was simply quoting testimony that Mr. Dangel himself gave on the stand."

DEFENDANT'S COUNSEL: "That, 'they can't restore. to us what they took from us.'   The manipulations are all traced to Mr. Dangel's office, and then he turns around and says after he gets their property away from them, 'these bonds that I gave you are worthless.'   That Mr. Dangel says he never countersigned a single bond, that. he took the authority to himself to control the entire corporation.   'That is how Mr. Dangel ran this corporation.. They put their money into his hands.   The real man trying to evade responsibility is Dangel.'   Then reading the oath of office and calling the jury's attention to the. fact that Mr. Dangel was making a defence here for lucre and malice and was delaying these people in the prosecution and collection of their claims; that the plaintiff Feinberg was an old man and a cripple, and that they were trying to take

away from him what rightfully belonged to him. Now I am objecting to those portions of the argument and I am asking your Honor to instruct this jury on each one to disregard them as not being proper and not compatible to the truth or to the evidence. 'That Mr. Dangel has taken away this old man's, this cripple's money.' The argument I claim is prejudicial, that they can't be restored to their position."

A portion of the charge to the jury is stated in the opinion. The jury answered both questions in the affirmative. The defendant alleged exceptions.

*W. R. Bigelow*, for the defendant.

*E. A. Whitman*, for the plaintiffs.

PIERCE, J.   In argument to the jury the plaintiff's counsel, assuming to quote from the testimony, said: "Mr. Dangel arranged to have the title of the Atlantic Theatres property transferred back to the corporation; . . . no stock of the Atlantic Company was then issued to any of these plaintiffs; . . . nothing but Melrose stock and bonds were issued; . . . the Melrose bonds were first mortgage bonds; and these were Mr. Dangel's bonds he gave up, . . . the corporation did nothing to put these bonds in operation, . . . there is no evidence that they came from the corporation's treasury. 'I told him [the plaintiff Feinberg] at the trial that Mr. Dangel was guilty of fraud' . . . 'they can't restore to us what they took from us.' The manipulations are all traced to Mr. Dangel's office, and then he turns around and says after he gets their property away from them, 'these bonds that I gave you are worthless.' . . . Mr. Dangel says he never countersigned a single bond, . . . he took the authority to himself to control the entire corporation. 'That is how Mr. Dangel ran this corporation. They put their money into his hands. The real man trying to evade responsibility is Dangel.'"

Counsel then read the attorney's oath of office which is as follows: "I (repeat the name) solemnly swear that I will do no falsehood, nor consent to the doing of any in court; I will not wittingly or willingly promote or sue any false, groundless or unlawful suit, nor give aid or consent

to the same; I will delay no man for lucre or malice; but I will conduct myself in the office of an attorney within the courts according to the best of my knowledge and discretion, and with all good fidelity as well to the courts as my clients. So help me God." G. L. c. 221, § 38. He then directed "the jury's attention to the fact that Mr. Dangel was making a defence here for lucre and malice and was delaying . . . [the plaintiffs] in the prosecution and collection of their claims; that the plaintiff Feinberg was an old man and a cripple, and that they were trying to take away from him what rightfully belonged to him."

At the colloquy between the judge and counsel for the defendant, which followed the argument of counsel for the plaintiffs, the judge, speaking in respect of the alleged statement, "I told him at the trial that Mr. Dangel was guilty of fraud," said: "Mr. Whitman [plaintiff's counsel] didn't say that," "he asked where he first got his information that these bonds were illegally issued, and Mr. Dangel said, 'I first got it from you, when you accused me of fraud.' . . . He [Mr. Whitman] was simply quoting testimony that Mr. Dangel himself gave on the stand." Of course the question whether counsel did or did not so state was for the jury. At the close of the argument the defendant's counsel said to the presiding judge: "Now I am objecting to those portions of the argument and I am asking your Honor to instruct this jury on each one to disregard them as not being proper and not compatible to the truth or to the evidence. 'That Mr. Dangel has taken away this old man's, this cripple's money.' The argument I claim is prejudicial, that they can't be restored to their position."

The judge did not instruct the jury to disregard any portion of the argument, but instructed them: "It also happens in many cases, and may have happened in this case, that in arguing at the close of the evidence, counsel has quoted things as having been said or done by various witnesses. It is for you to say whether or not the evidence as quoted is true. It is not what counsel says the evidence may have been. It is not what the court says the evidence

may have been. It is your recollection that remains in your minds of what the evidence was, and whenever your remembrance does not coincide with the statements made by counsel or by the court, you will entirely disregard any statements made by them and follow your own recollections of it. Counsel, of course, from such facts as are true facts is entitled to argue and to ask you to draw certain inferences and arrive at certain conclusions, but when counsel asks you to draw inferences, asks you to arrive at conclusions, you must be sure before you attempt to do so that the facts on which that argument is based are true facts founded upon the evidence."

The reading of the attorney's oath to the jury, and the direct or indirect appeal of the argument of counsel for the plaintiff that its ethical standards of an attorney's conduct should be adopted by them in determining what weight should be given the testimony of the witness Dangel, were manifestly prejudicial to the defendant and destructive of an impartial trial between party and party. The charge is clearly inadequate to overcome the natural dislike and prejudice which the reading of the oath and the argument of counsel would be likely to create in the minds of the jury toward the witness Dangel and his testimony. *London v. Bay State Street Railway*, 231 Mass. 480. *Commonwealth v. Perry*, 254 Mass. 520, 530. *Commonwealth v. Cooper*, 264 Mass. 368, 374. It is to be noted that Mr. Dangel was called as a witness by the plaintiffs, was not a party to the hearing on the issues that were framed to the jury, and that the bill of complaint had been dismissed as to him and the other defendants on the charges of fraud and misuse of corporate assets.

There is no question of law in the defendant's exceptions to the admission or rejection of evidence, or in the refusal of the judge to give certain requested rulings and instructions, which is likely to arise upon a new trial of the issues as framed. We therefore make no decision upon them.

*Exceptions sustained.*