CHARLOTTE A. CLARK *vs.* INHABITANTS OF EASTON.

Bristol.    October 26, 1887. — January 9, 1888.

Present: MORTON, C. J., FIELD, DEVENS, W. ALLEN, & HOLMES, JJ.

*Public Officer — De Facto and De Jure — Road Commissioners.*

Road commissioners are public officers for whose acts a town is not responsible.

A town, not having accepted the St. of 1871, c. 158, or the Pub. Sts. c. 27, §§ 74–77, elected "road commissioners," who, while performing the duties of that office, committed a trespass. *Held*, in an action against the town therefor, that they were road commissioners *de facto*, the validity of whose election could not be collaterally impeached.

TORT for trespass in repairing a town way in the defendant town. Trial in the Superior Court, before *Barker*, J., who ruled that on the facts the action could not be maintained, and directed a verdict for the defendant; and the plaintiff alleged exceptions. The facts appear in the opinion.

*L. C. Southard*, (*D. F. Buckley* with him,) for the plaintiff.

*H. J. Fuller*, for the defendant.

MORTON, C. J.    This is an action of tort for a trespass upon the plaintiff's land. The trespass consisted in entering upon the land and depositing thereon stone, earth, and rubbish, thereby obstructing a watercourse. The acts of trespass were committed by three persons acting as road commissioners in repairing a town way.

It is too well settled to need extended discussion, that officers like surveyors of highways and road commissioners, although they are elected and paid by the town, are public officers, and not agents or servants of the town, and that the town is not

responsible for their acts in the performance of their public duties. *Elliott* v. *Willis*, 1 Allen, 461. *Barney* v. *Lowell*, 98 Mass. 570. *Sudbury* v. *Heard*, 103 Mass. 543. *Haskell* v. *New Bedford*, 108 Mass. 208. *Cushing* v. *Bedford*, 125 Mass. 526. *McCarthy* v. *Boston*, 135 Mass. 197.

A majority of the court is of the opinion that this principle applies in the case at bar, because the persons who committed the trespass were acting as public officers, and were road commissioners *de facto*, not *de jure*.

At the annual meeting in March, 1883, the town elected three persons as road commissioners, being the same persons who committed the acts of trespass complained of.

In the year 1879 the town voted " to choose three road commissioners for the ensuing year to superintend the repairs of highways and town ways," and also voted " that all roads authorized or ordered to be built shall be built under the direction of the road commissioners." In that year, and in every year up to and including the year 1883, the town elected three road commissioners with the same powers and duties. It appeared in the trial of the case at bar that the town had never voted to accept the provisions of the St. of 1871, c. 158, or of the Pub. Sts. c. 27, §§ 74–77, relating to road commissioners.

Perhaps it might be held, in a proceeding directly against the persons chosen to test their title to office, that, by reason of the irregularities in the action of the town, they were not legally elected as road commissioners, with all the powers and duties appertaining to that office. But it is a serious question whether, so far as the duties of repairing highways and town ways are concerned, road commissioners thus elected would not be regarded as highway surveyors. The law requires that a town shall at the annual meeting elect " one or more surveyors of highways." Pub. Sts. c. 27, § 78.

Suppose a town should elect one person as road superintendent to repair the highways, there would be strong grounds for holding that such person was a surveyor of highways, though called by a different name.

But however this may be, we think that for the purposes of this case the persons elected by the town must be treated as road commissioners *de facto*, and that the plaintiff cannot in this

suit collaterally inquire into the validity and regularity of their election. They were elected by the town as road commission-ers, and accepted, were qualified, and publicly acted as such. They were thus in the position of persons who were holding and publicly exercising the functions of an office known to our laws, by virtue of an election by the town which was *prima facie* valid.

In *Fitchburg Railroad* v. *Grand Junction Railroad*, 1 Allen, 552, it is said in the opinion, that the definition of an officer *de facto* is " one who comes in by the forms of law, and acts under a commission or election apparently valid, but, in consequence of some illegality, incapacity or want of qualification, is incapable of lawfully holding the office." The case at bar falls within this definition. But in a later case it was held that this definition was too narrow, and that a man who had been a constable and continued to perform the functions of the office after his commission had expired, publicly holding himself out as a constable, was an officer *de facto*, whose acts in serving process could not be collaterally called in question, the court adopting in substance the broader definition of an officer *de facto* given by Lord Ellenborough in *The King* v. *Bedford Level*, 6 East, 356, 368, as being " one who has the reputation of being the officer he assumes to be, and yet is not a good officer in point of law." *Petersilea* v. *Stone*, 119 Mass. 465.

It is urged by the plaintiff, that the doctrine as to officers *de facto* cannot apply in this case, because there is no such office as that of road commissioner in Easton. The argument is, that there cannot be an officer *de facto* unless there is a legal office of which he performs the functions. The argument is plausible rather than sound.

A public office is a trust or charge created and defined by the public authority. The St. of 1871, re enacted in the Public Statutes, operating throughout the State, created the office of road commissioner and defined its powers and duties. St. 1871, c. 158. Pub. Sts. c. 27, § 74 *et seq.*

Under the statute the right inheres in each town to elect its citizens to fill the office. The office potentially exists in each town, capable of being filled in a certain manner. As a preliminary to a legal election, the town must first accept the act. If

it fails to do this, it is an illegality or irregularity in the election, but the persons who qualify and perform the functions of the office are in the position of persons who are publicly discharging the duties of a charge or trust created and defined by the general laws. The vote of the town accepting the act does not create the office. That exists by virtue of the general law, and the vote merely puts the town in a position in which it can legally fill the office by an election.

The question whether there can be a *de facto* officer when there is not a *de jure* office has been the subject of much discussion, and of conflicting decisions. We are inclined to the opinion that there cannot be such a *de facto* officer. But it is not necessary to discuss this question. There is no doubt that there may be *de jure* road commissioners in Easton; and the action of the town in the election of such officers is not legislative, but administrative in its character. As we have said, it does not create the office, but fills it.

In the case before us, the town year after year, for several years, elected road commissioners. The persons elected went on publicly performing the duties prescribed by the statute, and acting as a board of road commissioners under the sanction of the statute creating that office. All the considerations of public policy upon which the doctrine as to officers *de facto* is founded apply in this case as strongly as in any case where there is illegality in the election of officers.

We are therefore of opinion that the persons elected as road commissioners in the defendant town in the year 1883 were road commissioners *de facto*, and were public officers for whose acts the town is not responsible.          *Exceptions overruled.*