COMMONWEALTH *vs.* THOMAS O'BRIEN.

Suffolk. October 20, 1925. — November 25, 1925.

Present: RUGG, C.J., BRALEY, CROSBY, CARROLL, & SANDERSON, JJ.

*Conspiracy. Evidence,* Competency.

At the trial of an indictment against three defendants for conspiring to steal, it appeared that the stealing was to be done by means of a forged draft which was presented to a firm of stockbrokers by one of the defendants after an interview between them and the second defendant. The Commonwealth contended that the third defendant was the forger and introduced evidence that, after the delivery of the draft by the first defendant, he was met by the third defendant a short distance from the office of the stockbrokers and that they walked up and down for some time; that the third defendant, after his arrest in another State, left his eye glasses there; that it was arranged that the eye glasses should be sent to one of the arresting officers in Boston; that this was done and that afterwards that officer received a letter purporting to have been written by the third defendant requesting that the glasses be delivered to him; that later, in conversation with the third defendant, the officer said, "I got your letter and sent your glasses," and the third defendant said, "All right, I received them." The officer then said, "They were broken when I got them," and the third defendant replied, "That is all right, they were broken when I had them in" the other State.

Subject to exception by the third defendant, the letter was admitted as a standard, and an expert witness, using it as a standard, testified that the signature upon the draft was written by the third defendant. He was found guilty. *Held,* that

(1) The standard properly was admitted;

(2) The weight of the expert's testimony was for the jury;

(3) The evidence warranted a finding that the third defendant was guilty.

INDICTMENT, found and returned on July 9, 1924, charging George A. Hastings, Robert O. Sears, and Thomas O'Brien, otherwise called Thomas J. McCarthy, with conspiracy to steal.

In the Superior Court, the indictment was tried before *O'Connell,* J., with another indictment in six counts charging forging and uttering and attempting to commit larceny.

The testimony as to the letter admitted as a standard of the handwriting of the defendant O'Brien, otherwise called Thomas J. McCarthy, was as follows: The police inspector, Towle, mentioned in the opinion, had testified that the defendant O'Brien, also called McCarthy, when being conducted from New Jersey, where he had been arrested, to Boston, had remembered that he had left his glasses in New Jersey; that a telephone message was sent, *en route,* and arrangements were made that the glasses be sent to Towle in Boston; "that thereafter Towle received the glasses at Boston. At this point the district attorney showed the witness, Towle, a letter and envelope. The witness testified that it came to him through the United States mail delivered in his box; that that was the envelope and that was the letter enclosed. He was asked this question: 'By whom is that signed' (referring to the letter). At this point the defendant McCarthy by his attorney duly objected. Whereupon the district attorney offered to prove a conversation between the witness and the defendant O'Brien in reference to this communication. The district attorney put this question to the witness: 'Did you have a conversation with the defendant O'Brien in regard to the subject matter of that letter?' The witness answered that he had a conversation with the defendant McCarthy in the corridor on the second floor in the court house at Boston on October 28 about 9:15 in the

morning. That the witness stepped from the elevator and a step from the foot of the stairs he saw the defendant McCarthy. That the defendant McCarthy came over and said 'Good morning.' The witness said 'Good morning, I got your letter and sent your glasses.' The defendant McCarthy replied 'All right, I received them.' The witness said 'They were broken when I got them. They were tied on the nose guard with a piece of string.' The defendant McCarthy said 'That is all right, they were broken when I had them down to Atlantic City.'" The letter then was admitted as a standard of comparison of the handwriting of the defendant McCarthy subject to an exception by the defendant O'Brien, alias McCarthy. Other material evidence and rulings by the trial judge to which the defendant O'Brien excepted are described in the opinion. The defendant and Hastings were found guilty on the indictment for conspiracy. The defendant O'Brien alleged exceptions.

*P. J. Delaney, J. B. O'Hare, & G. C. Strong,* for the defendant, submitted a brief.

*M. Caro,* Assistant District Attorney, for the Commonwealth.

BRALEY, J. The defendant having been acquitted on the indictment for forgery, his exceptions are confined to the indictment for conspiracy, on which he was found guilty. The indictment charged that the defendant and George A. Hastings and Robert O. Sears conspired together to steal the property, moneys, goods and chattels of George C. Lee, who could be found by the jury to have been a member of the banking firm of Lee, Higginson and Company, doing business in Boston, but only the defendant and Hastings were tried as Sears had not been arrested.

The defendant offered no evidence and the case was submitted to the jury on the testimony introduced by the Commonwealth. If the jury accepted this testimony as true, they could find that a clerk of the company, employed as a seller of bonds, in response to a letter dated June 14, 1924, addressed to the firm, bearing on the letterhead the words, "Hotel Vendome," and purporting to be signed by Sears "per W. L. G.," had an interview with Sears, who after

further negotiations gave an order for the purchase of certain bonds, the price of which as finally fixed was $34,742.38. When Sears came to the office to receive and pay for the bonds, he stated that, his money being on deposit in a bank in Worcester, he would have to arrange for a draft. Sears telephoned to Worcester, using the firm telephone, and then said to the clerk, that his friend would get the draft, and either he or his friend would bring in the draft and pay for the bonds in the afternoon. Sears left, but later telephoned that his friend had arrived with the draft, and that because of other engagements, while he could not come himself, he would send some one with the draft, to whom the bonds were to be delivered. Very shortly after this message had been received, Hastings came for the bonds and brought a draft seemingly signed by "S. A. Ellsworth, Vice President," and drawn on the Mechanics National Bank of Worcester, payable to the order of Lee, Higginson and Company for $34,742.38. The draft was forged, and the bonds were never delivered. There also was found in the defendant Hastings's pocket a letter to the Hotel Vendome, apparently signed by Sears, with a "draft for twenty dollars in payment of my account due to date."

It is clear there was proof of a criminal conspiracy by Sears and Hastings to obtain the bonds by using the forged draft. *Commonwealth* v. *Dyer*, 243 Mass. 472, 483. While there was no direct evidence implicating the defendant, the remaining question is whether there was any circumstantial evidence on which it could be found that he was a participant. *Attorney General* v. *Tufts*, 239 Mass. 458.

It was in evidence that when Hastings left the office of Lee, Higginson and Company on the day he presented the draft, the defendant was seen waiting a short distance from the office, and that, after Hastings and the defendant met, they turned into an intersecting street and walked up and down for some time. The jury also, if they believed the evidence of Towle, a police inspector, could find, that the defendant had written him a letter, to the admission of which as a standard of comparison the defendant excepted. It was admitted rightly in the first instance by the presiding

judge as the genuine handwriting of the defendant, and it could be used by the handwriting expert called by the Commonwealth as a standard, the whole question being finally left to the jury under full instructions to which no exceptions were taken. *Commonwealth* v. *Coe,* 115 Mass. 481, 504. The credibility of this witness was for the jury, who on his evidence could determine whether the hand which wrote the letter was the same hand that wrote the draft. The jury also, if they were satisfied the letter was in the defendant's handwriting, could make the comparison for themselves. *Levi* v. *Rubin,* 241 Mass. 40.

It follows, that the requests for a directed verdict, and that there was no evidence that the defendant conspired with the other defendants, and that there was not sufficient evidence to warrant an ordinarily reasonable and prudent man in deciding that the defendant was guilty, and that the verdict must be not guilty, could not have been given. The exceptions to the denial of the defendant's motion for a new trial, not having been argued, are treated as waived.

*Exceptions overruled.*