## S. M. WHEELOCK v. THE STATE.*

*(Knoxville.* September Term, 1926.)

Opinion filed November 20, 1926.

1. **CRIMINAL LAW. Larceny. Accessory before the fact.**

The Legislature has seen proper to make larceny and "accessory before the fact," separate and distinct offenses, although the punishment in each is the same. (Post, p. 69.)

Citing: Freeman v. State, 3 Shannon Cases, 825; 1 Bishop Cr. L., sec. 542; 16 Corpus Juris, 277; Code, secs. 4591, 4593; State v. Larkin (N. H.), 6 Am. Rep., 457; 1 Hale's P. C., 625-636; 2 Hale's P. C., 244; Foster's Crown Law, 361-2; Rex v. Plant and Birchenough, 7 Carr & Payne, 575, 577; Rex v. Gordon, 1 East P. C., 352; State v. Sias, 17 N. H., 582; 2 Lead. Crim. Cas. 555.

2. **SAME. Same. Same.**

The crime of the accessory, though inchoate in the act of counseling, hiring or commanding, is not consummate until the deed is actually done. (Post, p. 73.)

Citing: State v. Ayers, 67 Tenn., 100.

3. **SAME. Same. Same. Averments must be proven.**

Where the indictment upon which a defendant was convicted charges him as accessory before the fact, in hiring, "moved, incited, counseled, hired, commanded and procured," and there being no satisfactory evidence, that defendant "procured" his confederate to steal, a reversal and remand will be directed for a new trial. (Post, p. 74.)

4. **SAME. Pleading and practice. Autre fois acquit.**

To entitle a defendant to the benefit of the plea of **Autre fois acquit**, it is necessary that the crime charged in the last indictment be precisely that charged in the first, and that the first is good in point of law. (Post, pp. 68-73.)

Citing:   Hite v. State, 17 Tenn., 374; Covington v. State, 142
     Tenn., 659; Fiddler v. State, 26 Tenn., 508.

*Headnotes 1.   Criminal Law, 16 C. J., section 463; 2.   Larceny,
36 C. J., section 510.

FROM GREENE.

Appeal in error from Criminal Court of Greene County.
—Hon. GUY S. CHASE, Judge.

ROBERT L. TAYLOR and GEORGE M. DUNN, for appellant.

MR. BARRY, Assistant Attorney-General, for the State.

MR. JUSTICE McKINNEY delivered the opinion of the
Court.

This is an appeal by S. M. Wheelock, hereinafter called
the defendant, from a judgment rendered by the crim-
inal court of Greene county upon a conviction of acces-
sory before the fact of grand larceny.

The jury fixed the punishment of the defendant at from
three to seven years in the State Penitentiary, and the
judgment of the court was in accord therewith.

The defendant was convicted upon the second count of
the indictment, which is as follows:

"And the Grand Jurors for the State and county afore-
said, upon their oath aforesaid do further present and
say that S. M. Wheelock on the 10th day of December,
1925, in the county and State aforesaid unlawfully and
feloniously did move, incite, counsel, hire, command and
procure Jas. B. Bowman, Don Wheelock, Webster Bow-

man and Guy Greer to commit a felony to-wit, to take, steal, and carry away clothing of the value of $150, shoes of the value of $50, and other valuable personal property to the Grand Jurors unknown, the property of R. P. Harmon, with intent to appropriate the same to their own use, and deprive the true owner thereof, against the peace and dignity of the State."

To said indictment the defendant filed a plea of *Autrefois acquit,* in which it was averred, in substance, that he had been previously tried and acquitted on an indictment charging him with the larceny of the specific goods enumerated in the second indictment, and that both indictments were predicated upon the same transaction.

This plea was overruled by the trial court upon the ground that the offense charged in the last indictment was separate and distinct from that charged in the first indictment.

Article 1, section 19, of our Constitution provides: "That no person shall, for the same offense, be twice put in jeopardy of life or limb."

In *Hite* v. *State,* 17 Tenn., 374, it was said: "To entitle a prisoner to the benefit of the plea of *autrefois acquit,* it is necessary that the crime charged in the last bill of indictment be precisely the same with that charged in the first, and that the first bill of indictment is good in point of law. 1 Chitty's Crim. Law, 453; 1 East's Pleas of the Crown, 522. The true test by which the question whether such a plea is a sufficient bar may be tried is whether the evidence necessary to support the second indictment would have been sufficient to procure. a legal conviction upon the first. Archb. Crim. Pl. 88; *Rex* v. *Emden,* 9 East, 437. If the crimes are so distinct that

evidence of the one will not support the other, it is as inconsistent with reason as it is repugnant to the rules of law to say that they are so far the same that an acquittal of one shall be a bar to the prosecution of the other. *Vandercomb's Case,* 2 Leach's Cr. Law, 717.''

The legislature of this State has seen proper to make larceny an ''accessory before the fact'' separate and distinct offenses, although the punishment in each is the same.

In *Freeman* v. *State,* 3 Shan. Cas., 825, the plaintiff in error was indicted as an accessory before the fact to murder in the first degree. The verdict of the jury was ''that they find the defendant guilty of murder in the first degree, with slight mitigating circumstances.'' This, court, in reversing the case, said:

''The offenses are essentially different. Being accessary before the fact of murder in the first degree, is a substantive offense, and distinct from the offense of murder itself, so that one indicted as a principal in a felony, cannot be found guilty as an accessory before the fact. Nor can he, if indicted as such accessory, be found guilty as a principal felon. 1 Bishop Cr. L., sec. 542; Code of 1858, secs. 4591, 4593; Shannon's Code, secs. 6432, 6433.

''The verdict and judgment were therefore erroneous, in that they treat the prisoner as a principal, while the indictment charges him only as an accessory before the fact.''

In 16 Corpus Juris, 277, it is said: ''Neither an acquital of larceny nor a conviction of receiving stolen goods is a bar to a subsequent indictment as an accessory before the fact to the larceny.''

This question is elaborately discussed in *State* v. *Larkin* (N. H.), 6 Am. Rep., 457, and we quote from the opinion in that case as follows:

"In 1 Hale's P. C. 625, 636, it is said, that 'if A. be indicted as principal and acquitted, he shall not be indicted as accessory before, and if he be, he may plead his former acquittal in bar, for it is in substance the same offense;' see, also, 2 Hale's P. C. 244. The intrinsic correctness of this position, which is admitted by Lord Hale to be contrary to the ancient law, is seriously questioned in Foster's Crown Law, 361, 362, where the author, after admitting that the offense is in substance the same '*in foro coeli*,' affirms that this is not also true '*in foro soeculi*;' 'for,' he proceeds, 'in the eye of the law the offenses of principal and accessory specifically differ, and fall under quite a different consideration, . . . and if a person indicted as principal cannot be convicted upon evidence tending barely to prove him to have been an accessory before the fact, which I think must be admitted; I do not see how an acquittal upon one indictment could be a bar to a second for an offense specifically different from it.' 'This,' says Sir Michael Foster, I offer as a doubt of my own, which is submitted to the opinion of the learned.' This 'doubt' is evidently shared in by Hawkins; section 2, Hawkins' P. C. 629, 530; and has at last been resolved into certainty, so far as the English law is concerned, by the decision of fourteen of the judges of England in *Rex* v. *Plant and Birchenough*, 7 Carr. & Payne, 575, 577; where it was held, that a person who has been tried for felony as a principal and acquitted cannot plead that acquittal in bar of another in-

dictment, which charges him with being an accessory before the fact to the same felony.

"Upon the whole we are inclined to follow the decision in *Rex* v. *Plant and Birchenough*. It has been questioned whether any distinction should ever have been made in law between a principal and an accessory before the fact (see 1 Bishop on Criminal Law, section 616) but the distinction has now become so thoroughly established that it will hardly be contended that anything short of a legislative enactment should be permitted to abrogate it. The question whether the respondent, when upon trial for the larceny, was put in jeopardy for the offense now charged, is to be determined in view of the practical construction of the law by the courts, rather than by an inquiry into the intrinsic reasonableness of that construction. The application of the former test leaves little doubt; for it is the general doctrine that a person indicted as principal cannot be convicted upon evidence tending merely to prove him an accessory before the fact (1 Bishop on Criminal Law, section 608) and *e converso,* it has been held that a person indicted as an accessory before the fact cannot be convicted upon proof that he was a principal. *Rex* v. *Gordon,* 1 East P. C., 352. Such being the rules of construction applied by the courts to indictments, it follows that the respondent could not, upon the previous indictment for larceny, have been convicted upon proof of the offense with which he was charged in the former indictment. He was in no danger then of being convicted of the crime with which he is charged now; and he is in no danger now of being convicted of the crime with which he was charged then. See *State* v. *Sias,* 17 N. H. 558; 2 Lead. Crim. Cases, 555.

"If the respondent had been convicted of the larceny, it might have been urged that, although the conviction could not have been obtained upon proof merely that he was an accessory before the fact, yet it must be conclusively presumed that the same proof which showed him a principal showed him also to be an accessory before the fact. As the respondent was not convicted of the larceny, it is unnecessary to decide whether this presumption is well founded, but it seems to us now something more than doubtful. To prove a man a principal it is not always necessary to show him an accessory before the fact. Even Lord Hale says, 'an acquittal of a man as an accessory before, or after, is no bar to a subsequent prosecution against him as principal' (1 Hale's P. C. 625); proof that Larkin stole the money would have been sufficient under the first indictment, without proving also that he incited or assisted Ann M. Elliott to steal it. The inciting and assisting Ann M. Elliott to steal is not a necessary integral part of the act of stealing charged in the first indictment to have been committed by the respondent himself.

"The respondent's counsel have probably been misled by section 552 of Wharton's Amer. Crim. Law, where it is said 'an acquittal as an accessory is a bar to an indictment as principal, and *e converso.*' The author refers to Hale, Foster, Hawkins, *Rex* v. *Plant,* and to one other case which has no bearing that we are able to discover. The first of these two propositions is denied by all three of the writers referred to; the second, which is the one now under consideration, is supported by Hale, doubted by Foster and Hawkins, and overruled in *Rex* v. *Plant.*"

It is true that, in a sense, the defendant is guilty of larceny; as pointed out in *State* v. *Ayers*, 67 Tenn., 100, in which case the court was dealing with a question of venue, and where it was pointed out that the offense "of accessory before the fact" is compounded of the connivance of the accessory and the actual thief by the principal felon. In this manner the offense here charged differs from that of larceny.

Reference has been made by counsel to the decision of this court in *Covington* v. *State*, 142 Tenn., 659, and *Fiddler* v. *State*, 26 Tenn., 508, but in those cases it was held that the offenses charged in the latter indictments were identical with those charged in the former indictments.

It will be observed also in those cases that the defendants in both instances were indicted under the same statute, whereas in the instant case the defendant was first indicted under the larceny statute, and later under the statute of accessory before the fact.

We are, therefore, of the opinion that the trial court committed no error in overruling the plea of former conviction.

Errors are also assigned upon the action of the trial court in declining to grant a new trial upon the ground of the insufficiency of the testimony to sustain the conviction.

As stated in *State* v. *Ayers*, supra, the crime of the accessory, though inchoate in the act of counseling, hiring, or commanding, is not consummate until the deed is actually done.

As will be noted above, the indictment upon which the defendant was convicted charges him with having moved,

incited, counseled, hired, commanded and procured his confederates to take, steal and carry away clothing, shoes and auto tires, and such was the character of property which said confederates stole from the store of the prosecutor Harmon; but we find no evidence to support the charge that the defendant procured his confederates to steal such property.

The only evidence offered by the State is that of the principal felon, Bill Bowman. He was introduced by the State and testified as follows:

"Q. When did you first talk to this defendant about this matter? A. I do not know, some two or three days before we went down there.

"Q. Where? A. At his restaurant.

"Q. How many times did you say you talked to him about it? A. Several times.

"Q. Did you talk with him about it again before you went? A. I think we spoke something about it the day we went down there.

"Q. Well what did he say with reference to the goods you should get in this raid and what kind of goods if anything? A. He said for us to get groceries and tobacco that clothing was marked and he would rather have groceries, cigars and cigarettes because they were not marked."

On cross-examination he testified as follows:

"Q. You say you talked to Sam (defendant) about it that day? A. Yes.

"Q. About this particular store? A. Well I think so, yes.

"Q. I want you to be sure about this. I want to know if you talked to Sam Wheelock on the day of this rob-

bery about robbing R. P. Harmon's store? A. I won't be sure about talking about robbing that store.

"Q. I want you to be sure. I want to know what time of day this conversation took place with Sam Wheelock, and who was present if any one? A. It was in his restaurant and no one was present and it was sometime in the morning.

"Q. Approximately what hour? A. I don't know that.

"Q. Give us your best idea? A. I can't give that I don't know.

"Q. 7 or 8 o'clock? A. I don't know.

"Q. Won't you give us your best idea? A. I said in the morning and I can't tell you the time it occurred.

"THE COURT: Give the jury your best impression. A. Sometime in the morning.

"Q. Near 10 than noon? A. No I won't say because I don't know. There is no use saying something when you don't know. It was sometime that morning."

It will thus be noted from the foregoing testimony that the only articles, according to the State's evidence, which the defendant procured the witness Bowman to steal were groceries and tobacco, and this witness, on cross-examination, testified positively that neither groceries nor tobacco were taken from the Harmon store. The defendant positively denied having procured Bowman and associates to commit this robbery, and testified that he had no knowledge of it whatever. There was a large amount of groceries and tobacco in the Harmon store, and it is remarkable that if the defendant procured Bowman and associates to rob said store and procure groceries and tobacco for him that they only took those things which the

defendant, according to Bowman's testimony, positively directed him not to take. The witness Bowman is shown to be a man of bad character, and admits having robbed four stores in all during the week that the Harmon store was robbed, and he does not claim to have turned over any of the goods so stolen to the defendant.

The defendant's son Don was one of Bowman's associates, all of whom were convicted of grand larceny.

Three or four days after the Harmon store was robbed, and after the defendant heard about it, he sent word to the sheriff that he had an overcoat which he had procured from Bowman for $10, and turned said overcoat over to the officers. This turned out to be one of the overcoats which was taken from the Harmon store on the night of the robbery, and, so far as the record shows, was the only property in the possession of the defendant out of all the property stolen by Bowman and associates.

It may be true that the defendant was confederated with Bowman and associates in these various thefts, but upon the character of evidence offered we are unable to say that he was, and feel constrained to reverse the case and remand it for a new trial.