COMMONWEALTH *vs*. ANTHONY DISTASIO.

Middlesex.     October 9, 1936. — May 27, 1937.

Present: RUGG, C.J., CROSBY, PIERCE, FIELD, & LUMMUS, JJ.

*Public Officer*, Judge. *Practice, Criminal*, Double jeopardy, Exceptions, Question of law or fact, Jury trial, Qualification of jurors, Charge to jury, Requests, rulings and instructions. *Pleading, Criminal*, Plea in bar. *Constitutional Law*, Double jeopardy. *Homicide. Accessory. Res Judicata. Evidence*, Of consciousness of guilt, Of handwriting, Presumptions and burden of proof. *Jury and Jurors. Grand Jury*.

The authority of a judge acting at least *de facto*, and not as a mere intruder or usurper, cannot be attacked collaterally in a proceeding before him.

A defendant in an indictment was not shown to have been harmed by a ruling that his plea of prior jeopardy raised an issue without further

pleading by the Commonwealth where the defendant without exception to the ruling proceeded to a hearing of the plea on its merits.

It *was stated* that the sufficiency of the defendant's plea of prior jeopardy to an indictment may be determined without demurrer or replication by the Commonwealth.

The defendant in an indictment was not entitled to a trial by jury of issues raised by his plea of prior jeopardy based on the record of his former trial, a question of law only being involved.

An indictment as accessory before the fact to a murder was not barred by a previous acquittal on an indictment as a principal in the same murder.

A directed verdict of not guilty on an indictment as principal in a murder on the specified ground that the defendant was not proved to have participated in the murder, was not an adjudication that he was not guilty of being an accessory before the fact to the same murder.

A verdict of guilty as accessory before the fact to murder was warranted by evidence that the defendant's father planned the murder as part of a scheme to defraud insurance companies, and that the defendant had knowledge of the scheme, participated in some of the preliminary steps thereof, accompanied his father to the scene of the murder and waited nearby while it was committed, though he did not participate in its actual commission, then drove his father away and helped conceal him, and later made false statements concerning his conduct.

That one suspected of crime made false statements when questioned as to his conduct at the time when the crime was committed was evidence of his consciousness of guilt.

Though under G. L. (Ter. Ed.) c. 274, § 4, a son could not be convicted as an accessory after the fact to a murder committed by his father, evidence of aid given by the son to his father after the murder was admissible to supplement other evidence of his guilt at the trial of an indictment as accessory before the fact.

An issue as to which of two persons had signed a lodging house register rightly was submitted to the jury on proof of standards of the handwriting of both.

The Commonwealth was not bound by the testimony of a witness produced by the district attorney.

One who had served as a grand juror was not disqualified by G. L. (Ter. Ed.) c. 234, § 2, from voluntary service as a traverse juror within three years.

One who had been sworn for service as a grand juror but had been excused and had not participated in finding a certain indictment was not a "member" of the grand jury which found it within G. L. (Ter. Ed.) c. 277, § 14, nor disqualified to sit as a traverse juror at the trial of the indictment.

At the trial of an indictment as accessory before the fact to murder, where the judge fully and accurately charged the jury as to that crime, there was no error in a statement by him to the jury that they need not concern themselves with the defendant's guilt as an accessory after the fact; nor error in the refusal of requested rulings whose subject matter was adequately covered by the judge in his own words.

Knowledge of and participation in a plan to commit murder could be
found by inference from other facts in evidence.

At the trial of an indictment as accessory before the fact to murder, an
instruction to the jury that the evidence "warranted" a finding that
the principal had committed murder in the first degree did not violate
G. L. (Ter. Ed.) c. 265, § 1.


INDICTMENT, found and returned to the Superior Court
on May 10, 1935.

The indictment was tried before *Dowd,* J.   The defendant
was found guilty and filed an appeal with assignments of
error.

*W. R. Scharton,* (*B. L. Goldenberg* with him,) for the
defendant.

*H. S. Boyd,* Special Assistant District Attorney, for the
Commonwealth.

RUGG, C.J.   This indictment as amended charges the
defendant with being an accessory before the fact to the
murder of one Daniel Crowley, which was committed on
May 6, 1935, by one Frank DiStasio, the father of the
defendant.   The father has been found guilty at an earlier
trial.   *Commonwealth* v. *DiStasio,* 294 Mass. 273.   The
present case comes before this court, after a verdict of
guilty, by appeal with a summary of the record, a transcript
of the evidence, and an assignment of errors, all in accord-
ance with G. L. (Ter. Ed.) c. 278, §§ 33A–33G.   *Common-
wealth* v. *McDonald,* 264 Mass. 324.   No questions need be
considered except those included in the thirteen assignments
of error.   *Commonwealth* v. *Ventura,* 294 Mass. 113, 125.

1. The first assignment of error relates to the authority of
the presiding judge.   At the beginning of the trial the de-
fendant objected to the authority of the presiding judge to
conduct the trial.   The defendant refused to plead and filed
a motion challenging the authority of the presiding judge.
The motion was denied; under order of the court a plea of
not guilty was entered; the objection of the defendant
to proceeding with the trial was overruled; and it was
ordered that the trial go forward.   The defendant excepted
and assigned these rulings as error.

The attack of the defendant on the authority of the trial

judge is based on the alleged fact that the Governor, James M. Curley, who had purported to appoint him to the Superior Court (Constitution of Massachusetts, c. 2, art. 9), was without power to do so because he had not complied with the provisions of the Constitution of Massachusetts, c. 6, art. 1, as amended by arts. 6 and 7 of the Amendments, respecting the oath of office to be taken by the Governor. The pertinent words of the Constitution are: "And the said oaths or affirmations shall be taken and subscribed by the governor . . . before the president of the senate, in the presence of the two houses of assembly. . . ." It is not disputed that the oaths of office as Governor were administered to James M. Curley by the Secretary of the Commonwealth in the presence of the members of the House of Representatives only. As matter of common knowledge the Senate was not organized for business and had not elected a president on the first Wednesday in January, 1935. Art. 64 of the Amendments to the Constitution. The contention of the defendant is that the provision of the Constitution just quoted is mandatory, and that because of his failure to comply with it the Governor never qualified for office and therefore was without power effectually to appoint the trial judge to judicial position.

These matters cannot properly be decided in this proceeding. The primary question relates to the authority of the trial judge. The status of the Governor who appointed him is relevant only so far as it throws light upon that inquiry. The decisions are numerous that such an issue cannot be raised collaterally in a proceeding like the present, if the officer whose authority is assailed holds office *de facto* and is not a mere intruder or usurper. In *Sheehan's Case*, 122 Mass. 445, 446, it was urged that a judge had vacated his office by accepting election as a member of the General Court contrary to art. 8 of the Amendments to the Constitution. It was there held that upon "well settled principles, it would be inconsistent with the convenience and security of the public, and with a due regard to the rights of one acting in an official capacity under the color of, and a belief in, lawful authority to do so, that the validity of his acts as a justice

should be disputed, or the legal effect of his election and qualification as a representative be determined, in this proceeding to which he is not a party." This principle is supported by other cases. *Fowler* v. *Bebee,* 9 Mass. 231. *Bucknam* v. *Ruggles,* 15 Mass. 180. *Coolidge* v. *Brigham,* 1 Allen, 333. *Fitchburg Railroad* v. *Grand Junction Railroad & Depot Co.* 1 Allen, 552. *Petersilea* v. *Stone,* 119 Mass. 465. *Commonwealth* v. *Taber,* 123 Mass. 253. *Attorney General* v. *Crocker,* 138 Mass. 214, 218. *Clark* v. *Easton,* 146 Mass. 43. *Commonwealth* v. *Wotton,* 201 Mass. 81, 84. *Moloney* v. *Selectmen of Milford,* 253 Mass. 400, 406, 407. *Sevigny* v. *Lizotte,* 260 Mass. 296. It is a widely accepted rule that the authority of a judge who is acting *de facto* in the performance of the functions of his office cannot be attacked collaterally in any proceeding before him. This is founded upon considerations of policy and necessity and the public welfare. *Ball* v. *United States,* 140 U. S. 118, 128, 129. *McDowell* v. *United States,* 159 U. S. 596, 601. *Matter of Danford,* 157 Cal. 425, 431. *Butler* v. *Phillips,* 38 Colo. 378. *State* v. *Carroll,* 38 Conn. 449. *Rex* v. *Lisle,* Andr. 163; *S. C.* 2 Stra. 1090. *Margate Pier Co.* v. *Hannam,* 3 B. & Ald. 266. *Parvin* v. *Johnson,* 110 Kans. 356. *State* v. *Roberts,* 130 Kans. 754. *New Orleans* v. *Mangiarisina,* 139 La. 605, 614. *People* v. *Townsend,* 214 Mich. 267. *Pringle* v. *State,* 108 Miss. 802. *Byer* v. *Harris,* 48 Vroom, 304, 309. *Sylvia Lake Co. Inc.* v. *Northern Ore Co.* 242 N. Y. 144; certiorari denied, 273 U. S. 695. *State* v. *Harden,* 177 N. C. 580, 584. *Youmans* v. *Hanna,* 35 N. D. 479, 518 *et seq.* *McGregor* v. *Balch,* 14 Vt. 428. *McCraw* v. *Williams,* 33 Grat. 510, 513. The rights of third persons ought not to be prejudiced as they would be if the acts of a *de facto* officer were rendered void by undisclosed circumstances and secret flaws in his title. The basis of his authority is secondary to the main issues on trial. An attack upon the authority of a public officer is commonly possible by a direct proceeding to test his title to office or in other actions where the question is raised directly. *Commonwealth* v. *Fowler,* 10 Mass. 290. *Commonwealth* v. *Hawkes,* 123 Mass. 525. *Answer of the Justices,* 122 Mass. 600, 603, 604. *Short* v. *Symmes,*

150 Mass. 298. This is the basis of most of the cases upon which the defendant relies in this connection. *Boyett* v. *Cowling,* 78 Ark. 494. *State* v. *Lansing,* 46 Neb. 514. *Manahan* v. *Watts,* 35 Vroom, 465. *Murphy* v. *Freeholders of Hudson,* 91 N. J. L. 40. In each of these cases, the question of the officer's title to office was put in immediate issue. Obviously, they are distinguishable from the cases above cited and do not shake their authority.

It is plain from the record as a whole that the trial judge was at least a *de facto* officer and not a mere interloper. It may be inferred that he had held office for something over a year under color of a valid appointment to an existing vacancy by one generally acknowledged to be the Governor of the Commonwealth. The authority of the trial judge was recognized by the public as having been acquired under the forms of law and as being apparently valid. *Bucknam* v. *Ruggles,* 15 Mass. 180. *Petersilea* v. *Stone,* 119 Mass. 465. *Attorney General* v. *Crocker,* 138 Mass. 214, 218. *Clark* v. *Easton,* 146 Mass. 43. *Commonwealth* v. *Wotton,* 201 Mass. 81, 85. *McDowell* v. *United States,* 159 U. S. 596, 601. *State* v. *Carroll,* 38 Conn. 449. It follows that the cases relied upon by the defendant concerning usurped authority or acts done in violation of an express constitutional or statutory prohibition are not in point. *United States* v. *Alexander,* 46 Fed. 728. *Keeler* v. *Stead,* 56 Conn. 501. *Hildreth* v. *M'Intire,* 1 J. J. Marsh. 206. *Shelby* v. *Alcorn,* 36 Miss. 273. *McCraw* v. *Williams,* 33 Grat. 510. The authority of the trial judge was at least *de facto* and cannot here be assailed. It is unnecessary to discuss the question of the authority of the Governor by whom he was appointed. This conclusion is supported directly by *Sheehan's Case,* 122 Mass. 445, and by the great weight of decisions in other jurisdictions.

2. The defendant filed a plea in bar in the nature of a plea of *autrefois acquit.* It was therein recited that the defendant had been tried, together with his father, upon an indictment charging him as principal in this murder, and that at the close of the evidence a verdict of not guilty had been directed in his favor. It was further stated in the

plea that, since in that trial there was uncontradicted evidence that he was present at the time the murder was being committed, the only possible reason that the presiding judge directed a verdict of not guilty was because this defendant was not there by arrangement or with any criminal intent; and that, therefore, the direction of a verdict in his favor constituted an adjudication that he had been free of such intent and without any arrangement with the principal defendant, Frank DiStasio.  On presenting the plea, the attorney for the defendant asked "whether or not the Government . . . has the right, under the statute, to join issue or demur."  The judge ruled that no legal replication was necessary to a plea in bar and that the plea itself raised an issue.  (See *Commonwealth* v. *Kozlowsky*, 238 Mass. 379, 385.)  Thereupon, without an exception or further objection in behalf of the defendant, the plea was heard upon the record in the earlier trial and upon arguments.  It thus appeared among other matters that the judge presiding over the earlier trial, with respect to the motion for a directed verdict in favor of the present defendant, made this ruling: "The motion is allowed.  If there is any guilt here, it is an accessory before a fact only.  There is no evidence to justify a jury in believing this man participated in the murder, as he must be proved to have, on a joint indictment for murder only."  At the conclusion of the hearing, the judge overruled the plea.  The defendant excepted.  This matter constitutes the second assignment of error.

It is not necessary to undertake a consideration of the ancient defence of prior jeopardy.  It exists as a part of our common law.  *Commonwealth* v. *Roby*, 12 Pick. 496, 502.  *Commonwealth* v. *McCan*, 277 Mass. 199, 201.  It is sanctioned and defined by G. L. (Ter. Ed.) c. 263, §§ 7, 8, 8A; c. 277, § 75.  The similar provision in art. 5 of the Amendments to the Constitution of the United States is not applicable to the several States.  *Frenckiewich* v. *Dowd*, 291 Mass. 95.  The defendant presses the alleged error with respect to the plea on four grounds: (1) because the plea in bar required some pleading on the part of the Common-

wealth by way of demurrer or replication; otherwise, no issue was raised; (2) because, assuming the parties were at issue, questions of fact were raised as to which the defendant was entitled to a jury trial; (3) because the plea stated an adequate defence and ought to have been sustained; (4) because, by the overruling of the plea, the defendant was deprived of the former acquittal as an adjudication in his favor as to facts to be tried in the case at bar.

(1) The first of these grounds relates to pleading. At common law the defence of former jeopardy had to be pleaded specially and was not available under a general plea of not guilty. *Commonwealth* v. *Hudson*, 14 Gray, 11. *Commonwealth* v. *Merrill*, 8 Allen, 545, 547. *Commonwealth* v. *Chesley*, 107 Mass. 223, 224. There has been some relaxation of this rule in several cases where the question has been considered when only the general issue had been pleaded. *Commonwealth* v. *Keefe*, 7 Gray, 332, 333. *Commonwealth* v. *Sutherland*, 109 Mass. 342. When this defence had been pleaded, it was formerly the practice to crave oyer of the record relied on to support the plea and then to test its sufficiency by demurrer. *Commonwealth* v. *Wade*, 17 Pick. 395, 401. *Commonwealth* v. *Peters*, 12 Met. 387, 389. See *Commonwealth* v. *Roby*, 12 Pick. 496, 498. This practice has fallen into disuse, but the legal sufficiency of a plea of this kind may be tested by demurrer. *Commonwealth* v. *Baldwin*, 213 Mass. 238. *Commonwealth* v. *Rice*, 216 Mass. 480. *Commonwealth* v. *Micheli*, 258 Mass. 89, 91. *Commonwealth* v. *Crecorian*, 264 Mass. 94, 96. Failure to demur is not fatal to a decision upon the plea. The practice in this respect on the criminal side of the court has become in considerable part assimilated to that prevailing on the civil side of the court, where no replication is required. *Commonwealth* v. *Kozlowsky*, 238 Mass. 379, 385. *Commonwealth* v. *Gallo*, 275 Mass. 320, 325, 326. See G. L. (Ter. Ed.) c. 214, § 14; c. 231, §§ 34, 141. It has been recognized that, if no objection is made to proceeding without demurrer or replication to the plea, the failure formally to join issue will be treated as waived. *Commonwealth* v. *McCauley*, 105 Mass. 69. It has been

held that, where the truth of the facts stated in the plea was conceded, an order overruling the plea without further pleadings was proper. *Commonwealth* v. *Farrell*, 105 Mass. 189, 191. The argument upon the plea may be treated as recognizing an issue as though raised by a demurrer *ore tenus*. *Commonwealth* v. *Lannan*, 13 Allen, 563, 568. *Commonwealth* v. *Robinson*, 126 Mass. 259. See *Wright* v. *Dame*, 1 Met. 237, 241. A decision of the issue raised by the plea is permissible even though formal pleadings are not in appropriate form. *Commonwealth* v. *Marsino*, 252 Mass. 224, 228. A decision upon a plea of prior jeopardy has been made in several instances where no objection has been interposed, even though no technical issue of fact or law appears to have been made. *Commonwealth* v. *Clair*, 7 Allen, 525. *Commonwealth* v. *Fredericks*, 155 Mass. 455. *Commonwealth* v. *Porter*, 237 Mass. 1. *Commonwealth* v. *Jones*, 288 Mass. 150. The defendant relies in this connection upon *Commonwealth* v. *Merrill*, 8 Allen, 545. That case is distinguishable even if the practice be treated as unchanged. The defendant there made instant objection to the informality and the decision rests on the fact that the defendant did not waive his rights. In the case at bar, the defendant saved no exception to the ruling of the presiding judge that no legal replication was necessary to a plea in bar. No harm has been done the defendant. His every substantial right has been preserved. His right to obtain a review of the proceedings has not been prejudiced.

(2) The defendant was not entitled to a trial by jury upon the issues raised by the plea. Ordinarily, the question whether the former prosecution set up in the plea constitutes a bar is one of law for the court. This is demonstrated by the great number of cases where the question has been determined as matter of law by overruling the plea as legally insufficient. *Commonwealth* v. *Wheeler*, 2 Mass. 172. *Commonwealth* v. *Andrews*, 2 Mass. 409. *Commonwealth* v. *Boyle*, 14 Gray, 3. *Commonwealth* v. *Golding*, 14 Gray, 49. *Commonwealth* v. *Bosworth*, 113 Mass. 200. *Commonwealth* v. *Bressant*, 126 Mass. 246. *Commonwealth* v. *McCormick*, 130 Mass. 61. *Commonwealth* v.

*Rice,* 216 Mass. 480. *Commonwealth* v. *Crecorian,* 264 Mass. 94, 96. In relatively few cases, other facts than those stated in the plea may be relied on by the prosecutor so as to raise an issue of fact. *Commonwealth* v. *Curtis,* 11 Pick. 134. *Commonwealth* v. *Daley,* 4 Gray, 209. *Commonwealth* v. *Dascom,* 111 Mass. 404. *Commonwealth* v. *Wermouth,* 174 Mass. 74. There was no issue of fact in the case at bar. The record in the earlier action was considered without objection as to its genuineness or validity. The chief question was whether an acquittal as principal constituted a bar to a prosecution as accessory before the fact. That is a bare question of law to be determined on examination of the record of the proceedings in the earlier case. *Commonwealth* v. *Ponzi,* 256 Mass. 159, 164. *Commonwealth* v. *Cabot,* 241 Mass. 131, 153, 154.

(3) There was no error of law in overruling the plea. Since there was no dispute that the defendant was placed in jeopardy within the meaning of the rule against double jeopardy, the only question is whether the earlier prosecution was for the same offence as that here charged. *Commonwealth* v. *McCan,* 277 Mass. 199, 201. The test for determining the identity of the offences for the purposes of this rule is established. It is not whether the defendant has been tried for the same act, but whether the evidence required to support conviction upon one prosecution would have been sufficient to warrant a conviction upon the other. "In considering the identity of the offence, it must appear by the plea, that the offence charged in both cases was the same *in law* and *in fact.* The plea will be vicious, if the offences charged in the two indictments be perfectly distinct in point of law, however nearly they may be connected in fact. As if one is charged as accessory before the fact and acquitted, this is no bar to an indictment against him as principal." *Commonwealth* v. *Roby,* 12 Pick. 496, 504. *Morey* v. *Commonwealth,* 108 Mass. 433. *Commonwealth* v. *McCabe,* 163 Mass. 400. *Commonwealth* v. *Porter,* 237 Mass. 1, 3. *Commonwealth* v. *Cabot,* 241 Mass. 131, 153. *Commonwealth* v. *Ponzi,* 256 Mass. 159, 164. *Commonwealth* v. *Crowley,* 257 Mass. 590, 595. *Commonwealth* v. *Jones,* 288 Mass. 150, 152.

The distinction between guilt as principal and as accessory before the fact to a felony is well settled. G. L. (Ter. Ed.) c. 274, §§ 2, 3. *Commonwealth* v. *Knapp,* 9 Pick. 496, 516, 517. *Commonwealth* v. *Brown,* 14 Gray, 419, 429. *Pettes* v. *Commonwealth,* 126 Mass. 242. *Commonwealth* v. *Adams,* 127 Mass. 15, 17. *Commonwealth* v. *Devine,* 155 Mass. 224. *Commonwealth* v. *Asherowski,* 196 Mass. 342, 345, 346. *Commonwealth* v. *Kaplan,* 238 Mass. 250. *Commonwealth* v. *Desatnick,* 262 Mass. 408. *Commonwealth* v. *Donoghue,* 266 Mass. 391, 399. *State* v. *Wyckoff,* 2 Vroom, 65, 66. Compare as to misdemeanors, *Commonwealth* v. *Jaffas,* 284 Mass. 417, 419. Since the offences are distinct, proof of guilt as accessory before the fact would constitute a variance upon an indictment as principal. Therefore, an acquittal upon an indictment as principal is not a bar to a prosecution as accessory before the fact. *Commonwealth* v. *Roby,* 12 Pick. 496, 504. *Commonwealth* v. *Ponzi,* 256 Mass. 159, 164. This is even more clearly true where as here it appears that the verdict of not guilty was ordered in favor of the present defendant in the prior prosecution expressly on the ground of such variance. G. L. (Ter. Ed.) c. 263, § 8. *Commonwealth* v. *Bubser,* 14 Gray, 83, 85.

Cases in other jurisdictions are in accord with the result required by our own decisions. "In murder, the felony of an accessory is not the act of a principal; and the felony of a principal is not the act of an accessory. In fact, they are different acts, done at different times and different places: in law, they are different crimes." *State* v. *Buzzell,* 58 N. H. 257, 258. *Rex* v. *Plant,* 7 C. & P. 575. *Wheelock* v. *State,* 154 Tenn. 66. *Harris* v. *State,* 140 Ark. 46. See *United States* v. *Rabinowich,* 238 U. S. 78, 85, 86.

(4) The further contention of the defendant with respect to the plea that the verdict of not guilty directed in his favor at the prior trial amounted to an adjudication that he had no part in the plan for the murder cannot be supported. This contention in substance invokes the principle of *res judicata.* In appropriate circumstances that rule is applicable to criminal adjudications. *Commonwealth* v. *Evans,* 101 Mass. 25. *Commonwealth* v. *Ellis,* 160 Mass. 165. *Commonwealth* v. *Perry,* 248 Mass. 19, 28, 29. That principle is

not available to the defendant. The direction of a verdict in favor of the defendant in the prior trial was based on the ruling "If there is any guilt here, it is an accessory before a fact only. There is no evidence to justify a jury in believing this man participated in the murder, as he must be proved to have, on a joint indictment for murder only." This ruling must be regarded as the true ground of the former decision. *Commonwealth* v. *Cabot*, 241 Mass. 131, 153, 154. *Commonwealth* v. *Campopiano*, 254 Mass. 560, 562. Nothing was thus adjudicated except the lack of guilt on the part of the defendant as principal. It can have no effect on the issues here raised, because guilt as principal is not now in issue.

3. The third, fourth and seventh assignments of error may be considered together because they raise substantially the same question. The third assignment is for refusal to direct a verdict in favor of the defendant on the opening by the prosecuting officer. The fourth assignment relates to the same general subject touching a motion for a directed verdict. The seventh assignment is refusal to grant a motion for a directed verdict in favor of the defendant at the close of the evidence. A decision as to the sufficiency of the evidence to support the verdict will dispose of all these objections.

There was evidence of the commission of the crime of murder in Hudson, in this Commonwealth, in substantially the circumstances described in *Commonwealth* v. *DiStasio*, 294 Mass. 273. There was evidence sufficient with its natural inferences to warrant a finding of these facts: The father of the defendant was in financial difficulties and creditors were beginning to press their claims. He took out various policies of insurance on his life in amounts in excess of his resources. The defendant was the beneficiary of all these policies at the time of the murder and had participated in negotiations for obtaining at least one of them. In pursuance of a plan to realize on these policies the father of the defendant bought and registered in his own name two automobiles, one fairly expensive and one old and inexpensive, paying therefor chiefly in time notes which he could not

reasonably expect to meet .at maturity in the normal course of his affairs. The defendant knew of these transactions and had personally negotiated for the purchase of the cheaper automobile. On May 5, 1935, the defendant with his wife and his father and a woman to whom the latter was engaged to be married rode by automobile to Hudson over substantially the same route followed on the day of the crime. On May 6, 1935, the father and the defendant were together most of the time. About noon the defendant appeared at the office of an insurance company and had conversation respecting payment of the premiums on his father's policy. At about six o'clock in the afternoon the defendant in the better of the two automobiles and his father in the old and inexpensive one met near Park Square in Boston. The latter took one Crowley in his automobile and both father and son proceeded to a road in Hudson. On the way there was a flat tire on the automobile driven by the father which he and the defendant repaired. At that time the defendant saw a man in his father's automobile. He knew that his father had two gallons of gasoline in the back of his automobile. The father at some point in Hudson requested the defendant to stop and turn his automobile around so as to face toward Boston. The father went on about nine hundred sixty feet, struck Crowley with an iron bar, soaked the interior of the automobile with gasoline and set it on fire. Crowley was burned beyond recognition and died as a result of carbon monoxide poisoning. By reason of a certain diary and keys the remains were identified as those of Crowley. In the automobile was found a ring bearing the initials of the father. After an interval of about fifteen minutes the father, walking down the road, returned to the son waiting in the other automobile. The son drove the two back to Boston. The son appeared at a lodging house with his father and arranged for a room for him for an indefinite period. The father registered under an assumed name and residence. The defendant went to a different house, reaching there about midnight. Important evidence of the guilt of the defendant arises from his own admissions. When first questioned he made numerous false statements as to his conduct on the night when the

crime was committed. Subsequently he acknowledged that he had lied on that subject. Finally he narrated in substance the facts of the trip to Hudson. This evidence shows more than mere knowledge and concealment of the crime committed by the father. It warrants a finding that the defendant counselled and aided in the perpetration of the murder in the sense that he joined in the plan and assisted in its execution. It might have been inferred that it was a part of the scheme that the remains of the human body burned in the old automobile were to be represented as those of the father and the insurance policies on his life collected by the defendant, who was the beneficiary under all of them, and the proceeds turned over to the father. G. L. (Ter. Ed.) c. 274, §§ 2, 3; c. 277, § 79. *Commonwealth v. Glover,* 111 Mass. 395, 403. *Commonwealth v. Adams,* 127 Mass. 15. *Commonwealth v. Asherowski,* 196 Mass. 342. *Commonwealth v. Kaplan,* 238 Mass. 250. *Commonwealth v. Merrick,* 255 Mass. 510. *Commonwealth v. Donoghue,* 266 Mass. 391. The false statements made by the defendant when questioned after the crime indicated a consciousness of guilt on his part. *Commonwealth v. Spezzaro,* 250 Mass. 454, 457. *Commonwealth v. Desatnick,* 262 Mass. 408, 414, 415. *Commonwealth v. McCarthy,* 272 Mass. 107, 111. These factors are not all explicable on the ground that the defendant was trying to save his father or to assist him after the crime was committed. Several showed willingness on the part of the defendant to inculpate his father in order to save himself. It is immaterial that the defendant did not know the victim, Crowley, or that he might have been prosecuted as a conspirator. *Commonwealth v. Jaffas,* 284 Mass. 417, 421.

The contention that the evidence is insufficient because it tends to show the defendant guilty as principal rather than accessory cannot be supported. There was evidence tending to show that the defendant waited in his automobile for his father at the time of the commission of the crime at a point distant about nine hundred sixty feet. The admissions of the defendant were to the effect that while waiting he could not see his father's automobile.

There was no evidence of participation by the defendant in the actual crime. The conclusion was warranted that the defendant was an accessory before the fact rather than a principal, of which crime he had been acquitted. His presence in the vicinity of the crime was not inconsistent with his guilt as accessory before the fact. It has been said that in a felony "one present but not acting may be an accessory before the fact." *Commonwealth* v. *Merrick*, 255 Mass. 510, 515. *Commonwealth* v. *Lucas*, 2 Allen, 170, 171. In *Commonwealth* v. *Chiovaro*, 129 Mass. 489, 493, it was said: "there can be no accessory before the fact to the crime of manslaughter." Even if the contention of the defendant is well founded in law, the evidence warranted a verdict of guilty as accessory before the fact. These assignments of error cannot be sustained.

4. The fifth and eleventh assignments of error relate to the same evidence although they raise different questions.

(1) A witness named Matys was allowed to testify that the defendant and his father came to her lodging house late on the night of the crime and that, after some negotiations, the latter took a room and registered under the name of "Edward Morand," "64 Broad Street, New York." The defendant urges that this evidence was incompetent because it tended only to show assistance by the defendant to his father after the crime. By reason of the kinship of the defendant to the principal felon, he could not have been convicted as an accessory after the fact. G. L. (Ter. Ed.) c. 274, § 4. *Commonwealth* v. *Sokorelis*, 254 Mass. 454. Hence the defendant argues that this evidence tended only to prove acts for which he could not be punished. This evidence, however, afforded some basis for an inference that the defendant knew of the crime. His conduct immediately after its perpetration, while consistent with aid to his father, had evidentiary value also to show knowledge of the crime at the time of its commission, especially in connection with other evidence indicating such knowledge. It was one of the "sticks" of evidence which was "relied on only when bound together in a fagot." *Collins* v. *Greenfield*, 172 Mass. 78, 81.

(2) The same witness also testified that when she let the room, it was the father of the defendant who signed the register. That register was admitted in evidence. There was also introduced in evidence as an exhibit a check concerning which a witness testified that the defendant filled out the body and his father affixed his signature. These instruments all were admitted in evidence generally but for other purposes than as examples of handwriting. No question was raised as to their genuineness. Without other testimony on this point the district attorney in his closing argument pointed out the similarity of the signature in the register to the defendant's handwriting in the check and urged the contention that the false name in the register was written by the defendant. The trial judge in his charge said to the jury that by comparison of the signatures they might find that the defendant signed the register and that if they so found they might weigh that fact "for what it is worth, as consciousness of guilt, this defendant's knowledge of what his father was doing." The defendant excepted to this portion of the charge as based upon facts not in evidence. *Commonwealth* v. *Clark*, 292 Mass. 409, 415.

It cannot rightly be said that this portion of the charge was not founded on evidence. The check containing handwriting of both the defendant and his father was proved by testimony of an eyewitness. 1 Wigmore on Evidence (2d ed.) §§ 693–696. The judge could properly have made the finding implicit in his charge that this writing had been shown to be that of the defendant and his father. The standard of handwriting therefore may have been found to be proved by "direct proof of the signature or other equivalent evidence," *Commonwealth* v. *Tucker*, 189 Mass. 457, 472, or "shown, by clear and undoubted testimony." *Commonwealth* v. *Coe*, 115 Mass. 481, 503. *McKeone* v. *Barnes*, 108 Mass. 344. *Commonwealth* v. *O'Brien*, 254 Mass. 86. Ultimately the comparison of handwriting was a question for the jury. If the writings on comparison indicated a close similarity between the writing of the defendant and the false signature in the register and that

the writing of the father was unlike either, it cannot be rightly said that there was no evidence that that signature was written by the defendant. The testimony of the witness Matys that the father wrote the signature in the register was not binding on the Commonwealth. *Commonwealth* v. *Festo,* 251 Mass. 275, 278, 279. *Haun* v. *LeGrand,* 268 Mass. 582, 584. *Commonwealth* v. *Whitcomb,* 277 Mass. 27. *Salem Trust Co.* v. *Deery,* 289 Mass. 431, 435.

5. The sixth assignment of error relates to the alleged disqualification of a juror and the refusal of the trial judge to order a mistrial when the alleged disqualification was discovered. The juror Murphy had been sworn as a grand juror for the year 1935, during which the indictments against the defendant and his father had been returned. This matter was not discovered until after the trial was in progress and evidence had been introduced.

The first ground of disqualification now urged is based upon G. L. (Ter. Ed.) c. 234, § 2, to the effect that with certain exceptions not here material a person who has served as a juror in any court "shall not be liable to be drawn or to so serve again within three years." This objection is without merit. It was not mentioned at the trial. This requirement is mainly for the benefit of persons called as jurors. *Swan's Case,* 16 Mass. 220. *Ex parte Brown,* 8 Pick. 504. It does not constitute a disqualification of such juror when called again within the time limited upon which a party may rely in circumstances such as here appeared.

When the jury was impaneled Murphy had been found upon examination to stand indifferent and was sworn without objection except one now immaterial. He had been excused from sitting as a grand juror during the sitting at which the indictments had been found. The records indicated further that he had not heard the evidence nor voted on the indictments and that he had not been recorded as present on the only occasion when the grand jury was acting during the former trial of the defendant. Therefore Murphy was not a member of the grand jury which had

found the indictment within the disqualification established by G. L. (Ter. Ed.) c. 277, § 14, to the effect that "No member of the grand jury which has found an indictment shall serve upon the jury for the trial thereof." *Crimm* v. *Commonwealth,* 119 Mass. 326, 331. It is not necessary to discuss the proper procedure if there had been a violation of said § 14. See *Commonwealth* v. *Hussey,* 13 Mass. 221; *Wassum* v. *Feeney,* 121 Mass. 93; *Smith* v. *Earle,* 118 Mass. 531; *Daniels* v. *Lowell,* 139 Mass. 56.

This assignment discloses no error.

6. The eighth, twelfth and thirteenth assignments of error concern portions of the charge to the jury and refusals to instruct the jury as requested. They have to do with related matters and may be considered together. The judge stated to the jury that they were not concerned with "an accessory after the fact" and failed to charge that "if the defendant had no knowledge that his father was going to commit a murder, his mere presence and taking his father home was not a crime for which the defendant could be convicted"; he also refused to give a requested ruling that mere knowledge that a crime was to be or had been committed and concealment of such knowledge would not render the defendant an accessory before the fact.

The charge contained a full and accurate explanation of what constituted accessory before the fact in the commission of a felony. It was made clear to the jury that participation in the planning of the crime and aid in its preparation and commission were necessary. It was stated that mere knowledge of the crime and presence at the scene were insufficient to sustain the indictment. The defendant was not charged with being an accessory after the fact. The statement to which exception was taken was a part of an entire charge. That charge described the crime for which the defendant was indicted and all its constituent parts. The charge was impartial and clear. There was a careful statement in the charge that bare knowledge and presence on the part of the defendant would not support a verdict of guilty, that the defendant must also be

proved to have had an active part antecedent to the commission of the crime, and that the jury must be satisfied of guilt of the defendant "before and up to the commission of the crime." In this context the statement that the jury need not concern itself with guilt as accessory after the fact was not error. It is settled that the form of words suggested in a request for ruling need not be adopted in the charge. Here the instructions to the jury adequately covered the facts disclosed by the evidence and the grounds relied upon by the prosecution and the defence. It was complete. It covered the issues raised. In such circumstances there is no just cause for complaint. *Commonwealth* v. *Merrick*, 255 Mass. 510, 515. *Commonwealth* v. *Welosky*, 276 Mass. 398, 418. *Commonwealth* v. *Clark*, 292 Mass. 409. *Commonwealth* v. *Sherman*, 294 Mass. 379, 394. It is not necessary to discuss these assignments in further detail. No error is disclosed.

7. The ninth assignment of error relates to a portion of the charge to the effect that there was evidence from which the jury might find that a criminal plan or design existed between the defendant and his father. There was no categorical evidence from the lips of any witness indicating that such a plan was formulated. There was ample evidence of facts from which the inference might be drawn that there was such a plan in the mind of the elder DiStasio and that the defendant knew about it. It is not necessary to state again all the evidence bearing on these matters. It has been in substance already narrated. A fact may be proved by reasonable inference from material circumstances. It is not necessary that there be oral testimony. *Commonwealth* v. *Webster*, 5 Cush. 295. *Commonwealth* v. *Kennedy*, 170 Mass. 18, 25. *Commonwealth* v. *Merrick*, 255 Mass. 510, 514. *Commonwealth* v. *Wood*, 261 Mass. 458.

8. The tenth assignment of error relates to an exception to a portion of the charge to the effect that if the jury believed all the evidence presented as to the crime of murder committed by DiStasio, the father of the defendant, they would be warranted in finding that the elder DiStasio "committed the crime of first degree murder when he

murdered Daniel Crowley." The defendant objects to this instruction on the ground that it violated G. L. (Ter. Ed.) c. 265, § 1, by taking the question of the degree of murder from consideration by the jury. If it be assumed that the defendant can object to such an instruction touching the crime committed by his father, there was no error. The instruction related to a matter of law, not to a question of fact. No decision of a question of fact was taken from the jury. There was hardly occasion in view of all the circumstances to explain in detail that a verdict of first degree murder was warranted. Instructions which went little if any further in explaining that a verdict of first degree murder would be warranted have been held proper in several cases. *Commonwealth* v. *Desmarteau,* 16 Gray, 1, 10. *Commonwealth* v. *Devlin,* 126 Mass. 253, 254. *Commonwealth* v. *Gilbert,* 165 Mass. 45, 54. *Commonwealth* v. *Madeiros,* 255 Mass. 304, 311, 315. See also as to instructions concerning the degree of guilt in murder cases, *Commonwealth* v. *Feci,* 235 Mass. 562, 571; *Commonwealth* v. *Devereaux,* 256 Mass. 387, 393, 394; *Commonwealth* v. *Taylor,* 263 Mass. 356, 360, 361; *Commonwealth* v. *Knowlton,* 265 Mass. 382. No one of these decisions deals with instructions as to the guilt of the principal in the trial of an accessory before the fact, but they are controlling in the case at bar. No error is disclosed respecting this assignment.

*Judgment on the verdict.*